MARVIN and another, Respondents, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*February 7 — February 24, 1891.*

RAILROAD COMPANY, *liability for negligence.* PLEADING. EVIDENCE.

1. A railroad company is bound to consider the nature of the surface of the country, through which its line runs, the combustible character of the moss and grass, the dryness of the season, the strength of the wind and its liability to drive a fire, once started, over the adjoining country, and to take effectual means to guard against the origin of such a fire on its right of way.

2. A complaint against a railroad company for injuries caused by a fire, which alleges that the company negligently allowed dry grass, rubbish and other combustible material to accumulate on its right of.

Marvin and another vs. The Chicago, Milwaukee & St. Paul R. Co.

way, and that the fire originated there from a spark that escaped
from its locomotive, and ran across the intervening country some
two and one half miles to the plaintiff's cranberry marsh, and de-
stroyed the vines growing thereon, states the circumstances attend-
ing the fire with sufficient particularity to render admissible evi-
dence of the strength and direction of the wind, the dryness of the
season, and the connection of the various marshes with that of the
plaintiff, in order to show that the burning of the latter was the nat-
ural and probable result of such fire.

3. But, in such an action, evidence is necessary to clearly connect the
negligent acts of the company and the fire originating on its right
of way with the fire which caused the injury to plaintiff, as being
the proximate cause thereof, especially where back fires were in the
meantime set upon different parts of adjoining marshes.

4. An intervening cause, not necessarily following the first negligent
act, such as the heavy northeast wind which, in this case is said to
have carried a burning brand over a ridge to a marsh adjoining
plaintiff's, may relieve the railroad company from its liability.

APPEAL from the Circuit Court for *Juneau* County.
The case is fully stated in the opinion.

*John T. Fish*, for the appellant, contended, among other
things, that the complaint did not set out the material cir-
cumstances of the fire with sufficient particularity to render
evidence thereof admissible, citing *Milw. & St. P. R. Co.
v. Kellogg*, 94 U. S. 256; *Atkinson v. Goodrich Transp. Co.*
60 Wis. 157; *Batterson v. C. & G. T. R. Co.* 8 Am. & Eng.
Ry. Cases, 123; *Pittsburg, C. & St. L. R. Co. v. Culver*, 60
Ind. 469; *Case v. Hobart*, 25 Wis. 654; *Pittsburg, C. & St.
L. R. Co. v. Hixon*, 8 Am. & Eng. Ry. Cases, 717.

*W. H. Rogers* and *F. W. Hall*, for the respondents,
argued, among other things, that the demurrer being *ore
tenus*, the complaint must be liberally construed; that it
does set out the material facts with sufficient particularity,
and the defendant was not taken by surprise. *Flinn v.
S. F. & S. J. R. Co.* 6 Am. Rep. 597. The railroad company
was guilty of negligence in suffering combustible material
to accumulate upon its right of way; and whether or not
that negligence was the proximate cause of the damage

was purely a question of fact for the jury, and was decided by them. 2 Rorer on Railroads, 794; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 228; *Jucker v. C. & N. W. R. Co.* 52 id. 150; *Del., Lack. & W. R. Co. v. Salmon,* 39 N. J. Law, 308; *Johnson v. C., M. & St. P. R. Co.* 31 Minn. 57; Bishop, Non-contract Law, 456.

COLE, C. J.   The complaint charges that' the defendant was negligent in using for operating its freight train an old, defective engine, which scattered sparks and coals on its right of way, and that this engine was carelessly managed. There was no evidence offered to support these allegations, and they were practically abandoned on the trial.   The particular act of negligence relied on is that the company allowed dry grass, rubbish, and other combustible material to accumulate on its right of way, in which a fire origi-nated from a spark which escaped from this engine near mile-post No. 19, and then passed from its right of way and ran across the intervening country to the plaintiffs' cranberry marsh, and destroyed the vines growing thereon.

The place where the fire originated on the right of way was about two and one-half miles nearly north of the plaintiffs' cranberry marsh, and the intervening country 'was principally a marsh covered with dry moss and feather grass.   It is indisputable that between 2 and 3 o'clock in the afternoon of July 28, 1886, a fire originated from a spark which escaped from the engine of a freight train near mile-post No. 19, and which spark lodged in the dry grass on the right of way and caused a fire.   Two persons, who were near the mile-post, saw the smoke just after the freight train passed, and went as quickly as possible to the fire, and tried to stamp it out with their feet, but could not extinguish it.   The wind was blowing a strong breeze from the northwest, and the fire spread rapidly to the east and south.   The season was a very dry one, drying up water in swales and low ground where it usually stood.

On the trial the plaintiffs were permitted to show, against the defendant's objection, the circumstances attending the alleged negligence of the defendant, such as the dryness of the season, the inflammable character of the surface of the intervening country, the connection of the various bottoms and their relation to the plaintiffs' cranberry marsh, and the strength and direction of the wind on the days between the origin of the fire, on Wednesday, and the following Monday, the day it reached the plaintiffs' cranberry marsh. It is objected that it was error to admit this kind of testimony under the allegations of the complaint. The allegations of the complaint are quite general, being to the effect that, as an engine passed along the track about 2 o'clock in the afternoon of the 28th of July, 1886, sparks and coals of fire escaped therefrom through the carelessness and negligence of the defendant, and came in contact with dry grass, old dry rubbish, and other combustible materials negligently permitted to accumulate on its right of way, at mile-post No. 19, which fire escaped from the right of way and ran across the intervening country, and also ran across and burned the plaintiffs' cranberry marsh. We think the allegations were sufficient to admit proof of the attending circumstances of the fire, and that the burning of the plaintiffs' cranberry marsh might be a natural and probable result of such fire.

The rule laid down, or rather approved, by this court in *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, is that the negligent act must be the proximate cause of the injury, and it must appear that such injury was a natural and probable consequence of the wrongful act, and ought to have been foreseen in the light of the attending circumstances. In the present case these attending circumstances, as shown, were the nature of the surface of the country, the combustible character of the moss and grass, the dryness of the season, the strength of the wind and its liability to drive a fire,

once started, over the adjoining country. The defendant was bound to consider these matters, and to take effectual means to guard against the origin of fire on its right of way, because it would be so liable to escape and spread over the adjoining country when once started. A slight wind blowing at the time would inevitably produce that result, consequently the defendant should have foreseen it. Of course it was necessary to show that this negligent act of the defendant, in allowing combustible material to accumulate on its right of way, was the proximate cause of the plaintiffs' injury, but this would be a matter of proof for the jury upon the facts. But we think the facts stated in the complaint were sufficient to admit the evidence as to the strength and direction of the wind, the dryness of the season, and the connection of the various marshes with the plaintiffs' property, as these were matters so very obvious and so likely to happen as to be within the common experience and knowledge of mankind.

But the difficulty which we have encountered in our examination of the case is in finding any reliable or satisfactory evidence which tends to prove or which warrants the conclusion that the fire which originated on the defendant's right of way extended to, or was the one which burned the plaintiffs' cranberry marsh. As we have said, this fire originated two and one-half miles north of plaintiffs' marsh, and the evidence is clear that a number of back fires were set north and east from this marsh to prevent the first fire from spreading and burning hay upon the adjoining lands. The fire which originated on the defendant's right of way was not traced to, and could not be, or was not, identified with, the fire which injured the plaintiffs' property, and, in view of the various fires which were set upon the different parts of the adjoining marsh, it seems to us utterly impossible to tell from the evidence whether the plaintiffs' cranberry marsh was burned by that fire or

by some other, the origin of which the defendant had no connection with, and for the consequences of which it was in no manner responsible. ʹ Of course there should be evidence which would justify the jury in finding that the fire·which originated on the defendant's right of way spread thence to the adjoining lands, and continued in its various courses until it reached the plaintiffs' property and destroyed it. The jury could not, or would not be per- mitted to guess that it was the same fire, from the fact that the plaintiffs' marsh was burned, when it appeared that so many other fires were set by other persons in the vicin- ity. The soundness of this view is too obvious to re- quire argument or illustration. The primary cause must be the proximate cause of the injury to the plaintiffs, and therefore a clear connection should be shown between the negligent act of the defendant and this injury.

ʹ It will not do to say that, because of the origin of the fire on the right of way, other persons were prompted to set other fires for the protection of their property, and that therefore the defendant must answer for all damages which resulted from any of the fires. We do not understand that any court has carried the rule of liability to that extent. Says Chief Justice DIXON, in *Kellogg v. C. & N. W. R. Co.* 26 Wis. 258: " The question whether the damages sustained were the natural and proximate result of the act or omis- sion complained of, whether such act or omission·constituted negligence with respect to the property injured, and whether the same was or was not the remote cause of the injury, within the maxim *causa remota non spectatur*, all depend · upon the same considerations, and come to one and the same point of inquiry." But, as we have said, there should be some necessary connection between the negligent act and the injury complained of, or a liability will not arise. Again, there must be no intervening cause not necessarily following the first negligent act.

Marvin and another vs. The Chicago, Milwaukee & St. Paul R. Co.

There are very strong grounds for saying, upon the testimony disclosed in the record, that there was an intervening cause in this case.   The witnesses described the fire in the Beaver bottom, on Monday, and say that it was not supposed it could cross the ridge east of the plaintiffs' marsh; but while they were fighting the fire on the bottom, which was running among the old trees and grass, there came a heavy north-west wind through or among the trees, and carried a brand of fire across the ridge into a little marsh adjoining or connected with the main marsh, which spread thence to the plaintiffs' cranberry marsh.   It is very probable, had it not been for this " whirlwind," as the witness calls it, which blew the burning brand over the ridge on the small marsh adjoining the plaintiffs' cranberry ground, the fire would not have reached their property, even if it be assumed that the fire from the right of way extended to or reached in its course the river bottom.

In this state of the proof, as to there being an intervening cause within the meaning of the authorities, and as to the uncertainty about the first fire, which originated on the right of way, ever having in its course extended to the plaintiffs' property and destroyed it, we think it was error in the trial court to have denied the motion for a new trial. Under the circumstances such motion should have been granted.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.