## NORTHWESTERN CONSOLIDATED MILLING COMPANY v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

January 19, 1917.

Nos. 20,008—(158).

**Interstate commerce.**

1. Interstate commerce is now governed exclusively by the laws enacted by Congress and by the common-law principles accepted and enforced by the Federal courts, to the exclusion of state laws and state rules and policies.

**Carrier — loss of shipment by act of God.**

2. Under the rule applied in the Federal courts, unless the carrier is chargeable with some negligence other than delay in making the shipment, the destruction of the property by an act of God, not foreseen in time to guard against it, absolves the carrier from liability.

**Same — negligence of carrier — burden on shipper.**

3. Where the carrier shows that the property was destroyed by an act of God, if the shipper claims that negligence of the carrier contributed to the loss, the burden is upon the shipper to prove such negligence.

**Same — evidence insufficient.**

4. In the present case the evidence fails to establish any negligence other than delay, and the carrier is not liable.

Action in the district court for Hennepin county to recover $965.80, the value of a carload of flour shipped over defendant's road to Bellington, West Virginia. The answer alleged that the shipment, after being delivered to defendant's connecting carriers, was destroyed in a flood of unexpected and great violence at Columbus, Ohio, and alleged that the bill of lading issued by defendant provided that no carrier in possession of the property should be liable for any loss thereof or damage thereto or delay caused by the act of God. The case was tried before Hale, J., who made findings and ordered judgment in favor of plaintiff for the amount

[1]Reported in 160 N. W. 1028.

demanded. From the judgment entered pursuant to the order for judgment, defendant appealed. Reversed.

*Barrows, Stewart & Ordway,* for appellant.

*William Furst,* for respondent.

TAYLOR, C.

Plaintiff, alleging the delivery to defendant of a carload of flour to be transported from Minneapolis, Minnesota, to Bellington, West Virginia, and the failure to deliver it at its destination or at all, sued defendant as the initial carrier for the value of the flour. Defendant admitted the contract to transport the flour and the failure to deliver it, but asserted that the flour had been destroyed while in transit by an act of God which released the carrier from liability for the loss. At the trial the allegations of the complaint were admitted, and the case was submitted to the court without a jury upon the complaint and the depositions taken by defendant. The court rendered judgment for plaintiff and defendant appealed therefrom.

The facts are not in dispute. The flour reached Columbus, Ohio, on March 19, 1913, and remained in the railroad yards at that place until March 25, on which date it was destroyed by an unprecedented flood. That the flood was of an unprecedented character is not questioned.

The liability of defendant is predicated upon the following finding of fact made by the trial court: "That through the unreasonable delay and concurrent negligence of the defendant's agents and connecting carriers the said flour was lost and destroyed by floods at Columbus, Ohio, on March 25th, 1913." The evidence is ample to sustain the finding that the delay at Columbus was unnecessary and unreasonable, and, if the carrier is liable where property destroyed by a flood would not have been in the path of the flood except for the negligent delay of the carrier, plaintiff is entitled to recover. This court, following the rule adopted by many state courts, held in Bibb Broom Corn Co. v. Atchison, T. & S. F. Ry. Co. 94 Minn. 269, 102 N. W. 709, 69 L.R.A. 509, 110 Am. St. 361, 3 Ann. Cas. 450, in respect to property destroyed by a flood while being transported by a common carrier, that if the carrier negligently delayed the shipment, and the goods were overtaken in transit and damaged by an act of God which would not have caused the damage had there been

no delay, he is liable even though the act of God could not reasonably have been anticipated.

Defendant contends that by the Hepburn Act and the amendments thereto Congress has assumed exclusive control over interstate commerce; that state laws no longer apply thereto; and that the Federal courts have established the rule that, where goods are destroyed by a flood or other act of God, the carrier is not liable therefor, even if the goods would not have been within the range of the destructive force except for the negligent delay of the carrier. We find defendant's contention well founded. That Congress· has now taken exclusive control of the subject of interstate commerce, and that such commerce is now governed by the laws enacted by Congress and by the "common-law principles accepted and enforced by the Federal courts," to the exclusion of state laws and state rules and policies, is fully established. Adams Exp. Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. ed. 314, 44 L.R.A. (N.S.) 257; Southern Exp. Co. v. Byers, 240 U. S. 612, 36 Sup. Ct. 410, 60 L. ed. 825; Atchison, T. & S. F Ry. Co. v. Harold, 241 U. S. 371, 36 Sup. Ct. 665, 60 L. ed. 1050; Ford v. Chicago, R. I. & Pac. Ry. Co. 123 Minn. 87, 143 N. W. 249; New York C. & H. R. Ry. Co. v. Beaham, 242 U. S. 43, 37 Sup. Ct. 43, 61 L. ed. —

Where property is destroyed by an act of God, but would not have been within the range of the destructive force except for the negligent delay of the carrier, it is established as the rule accepted and enforced in the Federal courts that the act of God, not the negligent delay of the carrier, is the proximate cause of the loss, and that the negligent delay of the carrier is too remote as a contributing cause to entail liability upon him. Clark v. Barnwell, 12 How. (53 U. S.) 272, 13 L. ed. 985; Railroad Co. v. Reeves, 10 Wall. (77 U. S.) 176, 19 L. ed. 909; Western Transportation Co. v. Downer, 11 Wall. (78 U. S.) 129, 20 L. ed. 160; St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co. 139 U. S. 223, 11 Sup. Ct. 554, 35 L. ed. 154; Thomas v. Lancaster Mills (C. C. A.) 71 Fed. 481, 19 C. C. A. 88; Cau v. Texas & P. Ry. Co. 194 U. S. 427, 24 Sup. Ct. 663, 48 L. ed. 1053; New Orleans & N. Ry. Co. v. National Rice Milling Co. 234 U. S. 80, 34 Sup. Ct. 726, 58 L. ed. 1223; Seaboard Air Line v. Mullin (Fla.) 70 South. 467.

In Railroad Co. v. Reeves, supra, a case involving damage by flood, the court said:

"The second instruction given by the court says that if, while the cars were so standing at Chattanooga, they were submerged by a freshet which no human care, skill and prudence could have avoided, then the defendant would not be liable; but if the cars were brought within the influence of the freshet by the act of defendant, and if the defendant or his agent had not so acted the loss would not have occurred, then it was not the act of God, and defendant would be liable. The fifth instruction given also tells the jury that if the damage could have been prevented by any means within the power of the defendant or his agents and such means were not resorted to, then the jury must find for plaintiff.

"In contrast with the stringent ruling here stated, and as expressive of our view of the law on this point, we cite two decisions by courts of the first respectability in this country.

"In Morrison & Co. v. Davis [20 Pa. St. 171, 57 Am. Dec. 695] goods being transported on a canal were injured by the wrecking of the boat, caused by an extraordinary flood. It was shown that a lame horse, used by defendants, delayed the boat, which would otherwise have passed the place where the accident occurred in time to avoid the injury. The court held that the proximate cause of the disaster was the flood, and the delay caused by the lame horse the remote cause, and that the maxim, *causa proxima, non remota spectatur*, applied as well to contracts of common carriers as to others. The court further held that, when carriers discover themselves in peril by inevitable accident, the law requires of them ordinary care, skill and foresight, which it defines to be the common prudence which men of business and heads of families usually exhibit in matters that are interesting to them.

"In Denny v. New York Central Railroad Co. 13 Gray (Mass.) 481, 74 Am. Dec. 645, the defendants were guilty of negligent delay of six days in transporting wool from Suspension Bridge to Albany, and while in their depot at the latter place a few days after, it was submerged by a sudden and violent flood in the Hudson river. The court says that the flood was the proximate cause of the injury, and the delay in transportation the remote one; that the doctrine we have just stated governs the

liabilities of common carriers as it does other occupations and pursuits, and it cites with approval the case of Morrison v. Davis, supra.

"Of the soundness of this principle we are entirely convinced, and it is at variance with the general groundwork of the court's charge in this case.

"As the case must go back for a new trial, there is another error which we must notice, as it might otherwise be repeated. It is the third instruction given by the court, to the effect that if the defendant had contracted to start with the tobacco the evening before, and the jury believe if he had done so the train would have escaped injury, then the defendant was liable. Even if there had been such a contract, the failure to comply would have been only the remote cause of the loss."

Under the Federal rule, unless the carrier is chargeable with some negligence other than delay in making the shipment, the destruction of the property by an act of God, not foreseen in time to guard against it, absolves the carrier from liability. The finding of fact in the present case is broad enough to imply negligence on the part of the carrier other than delay. Consequently it is necessary to determine whether there is evidence tending to prove negligence other than delay without which the property would not have been destroyed by the flood. It is the rule, enforced and applied in all the cases above cited, that the burden of proving such other negligence rests upon the plaintiff, and that he cannot recover unless such negligence is established by affirmative evidence. In the Reeves case from which we have already quoted it is said:

"A common carrier assumes all risks except those caused by the act of God and the public enemy. One of the instances always mentioned by the elementary writers of loss by the act of God is the case of loss by flood and storm: Now, when it is shown that the damage resulted from this cause immediately, he is excused.

"What is to make him liable after this? No question of his negligence arises unless it is made by the other party. It is not necessary for him to prove that the cause was such as releases him, and then to prove affirmatively that he did not contribute to it. If, after he has excused himself by showing the presence of the overpowering cause, it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it."

The evidence shows that about 7:30 o'clock on the morning of March 25, 1913, the representatives of the railroad, in whose yards the flour was then standing, first became apprehensive that the waters of the Scioto river might overflow the levee protecting that part of the city of Columbus in which such yards were located, and that the water broke through the levee about two hours later and destroyed the freight in the yards, including the flour in question. This is the only item of evidence which can be claimed to have any bearing upon the question as to whether the company, in the exercise of reasonable care, could have saved the flour from destruction by the flood. There is no evidence whatever that it was feasible or even possible to move the flour to a place of safety or to protect it otherwise, after the danger ought to have been anticipated. The evidence wholly fails to sustain any charge of negligence other than delay, and the judgment must be and is reversed.