Jones, J.
This action was tried to the court which heard the facts and rendered judgment for the plaintiff below. Since the record contains neither findings of fact nor conclusions of law it is difficult to determine exactly upon what feature of the case the trial court came to its conclusion. The shipment in question was an interstate shipment, made in pursuance of a bill of lading containing the exemption from liability heretofore noted. From the facts disclosed the court could have readily found that if reasonable care had been used the tallow might have been shipped and reached a point beyond the danger zone of the flood. Whether the judgment of the trial court was based upon that feature of the case, as a contributing cause to the damage, or was reached because of the facts hereafter disclosed in this opinion, is not clear.
The chief, and practically the only, legal contention presented by counsel upon both sides is as follows: Assuming that the flood was an unprecedented one amounting to an act of God, does the prior negligence of the carrier in merely delaying the shipment, without other acts of negligence, en *266 tail liability upon the carrier, notwithstanding the exemption stipulated for in the bill of lading? It is now urged, as one of the reasons for affirmance, that since the trial court could have well found that if due care and diligence had been used the shipment would have reached a place of safety before the advent of the flood, the carrier is not relieved from liability, but its negligence in delaying shipment becomes a contributing and proximate cause of the injury. It is undoubtedly true that there is a divergence of legal view among the various jurisdictions of this country as to the principle that should be applied. The one view is that if there had been antecedent negligence in the shipment of goods after its consignment, an extraordinary and unprecedented flood amounting to a vis major would not relieve the carrier from liability; the other view attributes injury to an unavoidable disaster, which could not have been reasonably anticipated by human agency, and, in case of mere delay without other acts of negligence, applies the principle of nonliability upon the part of the carrier, under the maxim, "causa próxima non remota spectatur.” Under this latter view the courts hold the delay to be the remote, and the act of God the proximate, cause of injury. This doctrine has been announced in the following cases, which have been frequently cited in the state and federal courts supporting it: Morrison v. Davis & Co., 20 Pa. St., 171; Denny v. N. Y. Central Rd. Co., 13 Gray, 481, and Daniels et al. v. Ballantine et al., 23 Ohio St., 532.
In cases of this character it is immaterial *267 whether the action sounds in contract or tort. Both at common law and by virtue of the stipulation in the bill of lading the carrier becomes immune from liability if the damage results from an unanticipated and unprecedented physical force. In either case the gravamen of the action is negligence. If the event proves to be so extraordinary as not to be anticipated by the exercise of human care and skill it is difficult to see upon what principle any bailee can be held. As stated in the opinion in Daniels et al. v. Ballantine et al., supra, the responsibility of the defendant “does not extend to consequences which can not he regarded as the natural results of his conduct, and which, on that account, could not, by ordinary forecast, be anticipated.” An attempt has been made to distinguish that case and to deny the application of the rule to common carriers by reason of the fact that a higher contractual duty rests upon them than upon an ordinary bailee. This distinction did not appear to carry weight with the judge delivering the opinion in the Ballantine case. Neither did it appeal to either of the courts deciding the cases of Morrison v. Davis & Co. and Denny v. N. Y. Central Rd. Co., supra. And it is difficult to perceive wherein the difference in principle obtains, since recovery must be based not upon the degree of contractual duty cast upon the bailee, but upon the tortious act of the defendant.
The federal courts have adopted the principle announced in the cases cited. Where there appears to be no act of negligence upon the part of the carrier other than mere delay in transportation it *268 has been uniformly held by the federal courts that such extraordinary and unprecedented events as disclosed by this record become the proximate, and the delay the remote, cause of the injury; and the state decisions heretofore referred to are cited with approval. Memphis & C. Rd. Co. v. Reeves, 10 Wall., 177; St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co., 139 U. S., 223, and Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co., 135 Fed. Rep., 135, affirmed 210 U. S., 1.
Whatever may be the view of the state courts in applying their local laws and decisions, since this was an interstate shipment, under a bill of lading, the rights and liabilities of the carrier are governed by federal laws and decisions. All questions relating to the liability of parties, under bills of lading for interstate shipment, issued in compliance with the Carmack amendment to the Flepburn Commerce Act, must be determined in accordance with the principles announced and enforced by the federal tribunals. This requirement is necessary in order to prevent adoption by the various state courts of divergent rules of liability arising from alleged violations of agreements for interstate shipments. Southern Ry. Co. v. Prescott, 240 U. S., 632; Cin., N. O. & T. P. Ry. Co. v. Rankin, 241 U. S., 319; N. Y. C. & H. R. Rd. Co. v. Beaham, 242 U. S., 148, and St. Louis, I. Mt. & So. Ry. Co. v. Starbird, 243 U. S., 592-596.
The second proposition of the syllabus in the case of Cin., N. O. & T. P. Ry. Co. v. Rankin, supra, is as follows: “Rights and liabilities of parties to an interstate shipment by rail depend *269 upon Acts of Congress, the bill of lading, and common-law principles as accepted and applied in. Federal tribunals.”
The supreme court of the state of Minnesota, which had theretofore refused to follow the Ohio rule, felt itself constrained to accept the federal rule in interstate shipments because of the federal authorities last cited. (Northwestern Consol. Milling Co. v. Chicago, B. & Q. Rd. Co., 135 Minn., 363.) See also the cases of Continental Paper Bag Co. v. Maine Cent. Rd. Co., 115 Me., 449, and Barnet v. N. Y. C. & H. R. Rd. Co., 222 N. Y., 195.
However this does not dispose of the case. Although it' does not clearly appear, the trial court may have based its judgment upon a finding that the defendant carrier was derelict in its duty after it obtained knowledge of the violent and unprecedented character of the flood. An inspection of the reply discloses that plaintiff claimed not only that the company was negligent in delaying the shipment for a period of five days, but that it was also negligent in allowing the goods to remain in a place where they were exposed "to danger from the flood. While the carrier cannot be held to anticipate the flood in question, still the duty is cast upon it to use reasonable skill and diligence in the care of property entrusted to it, after discovery of its unusual peril. The amount of care to be exercised, of course, depends upon the attending circumstances and the danger to which the property is exposed. While the carrier js not held liable for an adventitious delay, it may be held responsible for damage if proper care was not used. This *270 principle is fully upheld in the cases cited. (Morrison v. Davis & Co. and Denny v. N. Y. Central Rd. Co., supra.) The same principle is also sustained by the federal courts. (Clark et al. v. Barnwell et al., 12 How., 272; Cau v. Texas & P. Ry. Co., 194 U. S., 427, and New Orleans & N. E. Rd. Co. v. National Rice Milling Co., 234 U. S., 80.) The latter case decides that if the judgment was based upon facts disclosing negligent conduct upon the part of the carrier in not properly safeguarding the property entrusted to it under a bill of lading for interstate carriage, after discovery of the unprecedented character of the flood and its impending dangers, the carrier cannot claim immunity under its asserted federal rights. Nor would the judgment be incompatible with the Minnesota case, supra, since the court in that case expressly stated in the closing paragraph of its opinion that there was no evidence that it was feasible or even possible to move the goods -to a place of safety or otherwise protect them after anticipated danger.
The record in the instant case discloses that the flood was an unprecedented one, extending along the line of the defendant’s road in a southerly direction. On the night of the 23d of March it appeared in the vicinity of Findlay, Ohio; on the following night it had reached Kenton; and on the morning of March 25th it had reached the city of Columbus and the local yards of the defendant at that point. It appears that there was no effort made to clear the Columbus yards at any time between the 23d and 25th of that month. The super *271 intendent of the railway company, who had general supervision over transportation and train service, on cross-examination testified as follows:
“Q. 11. Now, I understand you to say, that the last freight train leaving for the north left Columbus about 10:00 o’clock P. M. of the 23rd? A. The last train left the yard about 10:35 A. M. of the 23rd and the last through freight train that left the yard left 10:00 P. M. of the 23rd. That was the last at Columbus.
“Q. 12. There were various points north of Columbus where your track would bé sufficiently elevated above the flood ? A. Yes.
“Q. 13. And you had sidings at those places? A. Yes.
“Q. 14. So that if anything there destined for northern shipment had been taken out any time between the 20th and 25th, it could have found a safe place of refuge along your line at various points, couldn’t it? A. Probably.
“Q. 15. You had sufficient yard capacity there to take care of your business, didn’t you? A. Yes, relatively speaking.”
From this and other testimony appearing in this record we may well conclude that the courts below may have based their judgment upon proof that the carrier company did not exercise that degree of care which it should have exercised after it obtained full knowledge of the flood conditions.
The record, including the exhibits, shows sufficient compliance with the terms of the bill of lading requiring written notice of loss to the carrier. .... .....
*272 For the reasons stated the judgments of the courts below are affirmed.

Judgments affirmed.

Newman, Matthias and Johnson, JJ., concur.