JACOB ANDERSON v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY AND OTHERS.[1]

September 17, 1920.

No. 21,855.

**Amendment of pleadings — discretion of court.**

1. The amendment of pleadings is a matter which lies almost wholly in the discretion of the trial court, and its action will not be reversed except for a clear abuse of discretion. Considerations properly influencing the exercise of such discretion are the probability of the opposite party having been misled, the manner in which evidence, to which an amendment relates, came into the case, the scope of the amendment, and the stage the action has reached.

**Amendment of complaint after verdict.**

2. There was no abuse of discretion in allowing an amendment to the complaint after verdict in a railroad fire case, where the defense was that plaintiff's property was destroyed by fires of unknown origin, and plaintiff's evidence in rebuttal tended to show that defendant was responsible for such fires in addition to one originally alleged to have destroyed the property.

**Special instruction to jury.**

3. There was no contradiction of the rules laid down in the court's general instructions to the jury in a special instruction given on the following day in response to a question asked by the jury. The later

1 Reported in 179 N. W. 45.

flared up and burned his property shortly before it was reached by one of the great fires which swept through northeastern Minnesota at the close of that day.

Defendant introduced evidence to show that on and prior to October 12 fires were burning west and northwest of and were swept by the wind towards plaintiff's premises. It did not show how such fires originated, neither did it clearly and certainly trace the destruction of plaintiff's property to them.

By cross-examination of defendant's witnesses and by his rebuttal evidence, plaintiff made a showing which would have justified the jury in finding that the fires proved by defendant were started by its locomotive on or near its right of way in the vicinity of Kettle river.

After plaintiff's evidence in rebuttal had been put in, the jury were excused to enable defendant's counsel to confer, who later announced they had decided to rest without offering additional evidence. Each of the parties then moved for a directed verdict. Both motions were denied. In making his motion, plaintiff's counsel stated that it was his position that there was no evidence tending to show that any other fire than the bog fire, or fires set by defendant in the vicinity of Kettle river, destroyed plaintiff's property. The Kettle river fires were the subject of much of the testimony received. They started west or northwest of plaintiff's land several days prior to October 12.

Numerous special instructions were requested. One of defendant's was that plaintiff had predicated his cause of action upon the bog fire; that, if he failed to establish that cause of action, he could not recover, even though the jury should find that other fires referred to in the evidence were started by defendant's locomotives and contributed to the burning of his property. This request was denied.

In instructing the jury, the court said in part:

"Plaintiff claims that if there was any fire coming from the west or the northwest of the bog fire, that burned over plaintiff's property, that that fire or fires were set by the defendant's engines, and that defendant is responsible for such fires and the result thereof. * * *

"If you find from the evidence * * * that the property of the plaintiff was injured or destroyed by fire communicated directly or in-

146 M.—28.

directly by (defendant's) locomotive engines * * * your delibera-
tions, so far as the question of liability of the defendant is concerned,
are at an end, and the next question for you to consider is the amount of
plaintiff's damages. * * *

"If plaintiff's property was damaged by fire originally set by one of
defendant's locomotives, then defendant became liable for such damage
and was not released from such liability by anything that happened there-
after. * * *

"If the plaintiff was burned out by some fire other than the bog fire,
which other fire was not set by one of the defendant's engines, then, of
course, the defendant is not liable. * * * If the plaintiff was burned
out by fire set by one of defendant's engines in combination with some
other fire not set by any of its engines," then it is liable.

"If you find that other fire or fires not set by one of the defendant's
engines mingled with one that was set by one of the defendant's engines,
there may be difficulty in determining whether you should find that the
fire set by the engine was a material or substantial element in causing
plaintiff's damage. If it was, the defendant is liable, otherwise it is
not. * * *

"If you find that bog fire was set by the defendant's engine and that
some greater fire swept over it before it reached the plaintiff's land, then
it will be for you to determine whether that bog fire * * * was a
material or substantial factor in causing plaintiff's damage. If it was
* * * defendant is liable. If it was not, defendant is not liable.
If the bog fire was set by one of the defendant's engines, and if
one of defendant's engines also set a fire or fires west of Kettle river, and
those fires combined and burned over · plaintiff's property, then the de-
fendant is liable."

These instructions were given on Saturday, December 27. During the
afternoon of the following Sunday the jury returned into court and asked
whether the defendant would be liable if they should find that one of
defendant's engines set a fire west of Kettle river and that on October 12
this fire was of sufficient magnitude to play an important part in any
consolidation of fires that may have occurred between it and other fires
coming from the west and northwest, and the consolidated fires passed

over plaintiff's land and did the damage. The court answered that it would be liable. None of defendant's counsel were present when the Sunday proceedings took place. On the following Monday the jury returned a sealed verdict in favor of plaintiff. Proper exception was taken to the Sunday instructions to the jury.

Subsequently plaintiff asked and was allowed to amend his complaint by alleging in substance that the Kettle river fire or fires and the bog fire destroyed his property.

1. Defendant contends that it made a showing from which the jury might have found that fires of unknown origin, coming from the west and northwest, destroyed plaintiff's property independently of the bog fire. For the purposes of the case we will assume that there was sufficient evidence to warrant the jury in so finding. To meet an issue tendered by the answer and supported by defendant's proof, plaintiff was properly allowed to offer evidence tending to show that these fires were set by defendant's engines. Defendant does not seriously contend that such evidence was not admissible. Citing Gracz v. Anderson, 104 Minn. 476, 116 N. W. 1116, it takes the position that, while the evidence may have been admissible to overcome its defense, it was not admissible to establish a substantive ground of recovery, because the complaint makes no reference to these fires. The case cited states the familiar rule that, when issues not made by the pleadings are litigated by consent, an amendment should be ordered as a matter of course, and, when not voluntarily litigated, the matter rests in the discretion of the court, and holds that the court did not abuse its discretion in refusing to allow an amendment which introduced as a substantive ground of recovery acts of negligence not originally pleaded but brought out in the evidence. By a long line of decisions, it is settled that the amendment of pleadings is a matter lying almost wholly in the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. 2 Dunnell, Minn. Dig. § 7696. An important consideration is the probability of the opposite party having been misled and so deprived of an opportunity to meet the newly pleaded matter with evidence. That consideration was not present here. Defendant had an opportunity to offer evidence of how the Kettle river fires originated and what became of them, but deliberately decided not to go into the subject.

Another consideration is the manner in which evidence, to which an amendment relates, came into the case. If it was brought out by the party opposing the amendment, or in response to an issue he introduced by his pleadings or proof, there should be greater freedom in allowing the amendment. The variance between the original pleading and the proof in such a case ought to be disregarded because it cannot mislead. G. S. 1913, § 7784; Reed v. Great Northern Ry. Co. 76 Minn. 163, 78 N. W. 974.

The scope of the amendment is also to be considered. If the amendment to a complaint does not introduce an entirely new cause of action, but merely changes the statement of the manner in which the injury was inflicted, it is ordinarily permissible. 2 Dunnell, Minn. Dig. § 7709.

The stage the action has reached is also to be considered. Ordinarily the earlier an amendment is applied for the more liberally will it be granted. However, if a variance has not misled the adverse party to his prejudice, an amendment will be permitted even after an appeal to this court. Adams v. Castle, 64 Minn. 505, 67 N. W. 637.

We are satisfied that there was no abuse of discretion in granting the application to amend the complaint to make it conform to proof properly received to meet the defense. The amendment did not introduce an entirely new cause of action. It added to and changed the statement of the time and place of origin of the fire which was first alleged to have inflicted the injury. The cause of action remained the same—the wrongful destruction of plaintiff's property by a fire or fires started by defendant. The field to be covered by the evidence was enlarged, but it was defendant's pleading and proof that made it necessary to enlarge it. The evidence received was admissible. Plaintiff could have recovered without it under his original pleading and proof. In this respect the case is unlike Guerin v. St. Paul F. & M. Ins. Co. 44 Minn. 20, 46 N. W. 138.

2. A more difficult question is presented by the apparent conflict between the general charge to the jury and the Sunday instructions. Portions of the charge justify the assertion that there is no conflict. Other portions seem to justify the contrary assertion. The precise situation covered by the Sunday instructions may not have been in the mind of the court when the charge was given. The thought expressed in the general charge is this: Assume that defendant's engine did set the bog fire, but

that some greater fire swept over it before it reached plaintiff's land, then and in that event defendant is not liable, unless the bog fire was a substantial factor in causing plaintiff's damage. Defendant concludes that, by the greater fire referred to, the court meant the Kettle river fire for which defendant may have been responsible. With equal force it may be said that the court meant the great fires from the west, for which defendant may not have been responsible. As it seems to us, there was at most an obscurity, due to the omission after the words "greater fire" of the qualifying phrase "set by one of defendant's engines" or "not set by one of defendant's engines." The jury were left in doubt as to defendant's responsibility if the Kettle river fire "played an important part of any consolidation of fires between it" and the west and northwest fires. That subject had not been covered in the general charge. The Sunday instructions were supplemental to and not contradictory of the general charge, and the assertion that the law as stated on Saturday ceased to be a law after the court's utterance on Sunday, is not borne out by the record. We are of the opinion that the law was correctly stated in the Sunday instructions, assuming that by pleadings or voluntary litigation of the issue to which it was directed, the question was in the case. Even if the law had theretofore been otherwise stated, it has been held that it is permissible for a judge to change his mind during the trial of a case. Scheurer v. Great Northern Ry. Co. 141 Minn. 503, 170 N. W. 505.

3. Complaint is made because the Sunday proceedings took place in the absence of defendant's counsel. Fillippon v. Albion Vein Slate Co. 250 U. S. 76, 39 Sup. Ct. 435, 63 L. ed. 853, is authority in defendant's favor upon this point. If the question were an open one in this state, it might be conclusive, but a contrary rule has long obtained here. Hudson v. Minneapolis L. & M. Ry. Co. 44 Minn. 52, 46 N. W. 314; Reilly v. Bader, 46 Minn. 212, 48 N. W. 909; Strite G. P. Co. v. Lyons, 129 Minn. 372, 152 N. W. 765. Although the court is not obliged to notify counsel when the jury returns for further instructions, we believe it has been the custom of district judges to send notice to counsel before such instructions are given, unless the trial would be unreasonably delayed if this were done. The custom has our unqualified approval, not

only as a proper exercise of judicial courtesy, but for the better reason that if one of the parties is represented while the other is not and the latter is the loser, he is almost certain to believe that an unfair advantage of him has been taken and his confidence in the impartial administration of justice is shaken.

4. In addressing the jury, one of plaintiff's counsel said that, if there was a verdict for defendant, the bill of costs will be so exorbitant it will ruin plaintiff. An exception was promptly taken. Before the jury retired, defendant entered of record a waiver of all costs and disbursements it might tax if it prevailed. The statement of plaintiff's counsel was improper. It was doubly so in view of the fact that the trial had occupied several weeks, the testimony of more than a hundred witnesses had been taken, and there would be a formidable bill of costs that one of the parties must pay. But the misconduct could hardly prejudice defendant after it announced that it waived costs. For this reason, there was no error in denying a new trial on this ground.

5. Defendant requested the court to instruct that the extraordinary and unusual wind and weather conditions on October 12, 1918, were such an efficient and independent cause of plaintiff's damage as to relieve defendant from liability. The refusal so to instruct is assigned as error. Defendant relies on the rule that a wrongdoer may escape liability by showing that a new cause of plaintiff's injury intervened between the wrongful act and the final injurious result thereof, provided such intervening cause was not under the wrongdoer's control, could not by the exercise of reasonable diligence be anticipated as likely to occur and except for which the injury would not have been done to plaintiff.

We are of the opinion that the rule does not apply to the facts in this case. There was a drought in northern Minnesota throughout the summer and fall of 1918. It was protracted and severe. There was a high wind on October 12. Towards evening and for a short time it reached a velocity of 76 miles an hour. The fire or fires which destroyed plaintiff's property had been burning a long time. Defendant was bound to know that the greater the drought the greater danger of the spread of a fire. Strong winds are not uncommon in Minnesota. The evidence showed that a fire, when sufficiently extensive, will create air currents as the heated air rises and cooler air rushes in to take its place. The operation of

this natural law tends to increase the violence of any wind that may be blowing in a region of fires.

The court was justified in refusing to give the requested instruction for another reason. Neither the drought nor the wind would or could have destroyed plaintiff's property without the fire. The result was one which might reasonably be anticipated as a natural consequence of setting a fire and permitting it to burn for days in a country abnormally dry. Hence, if it can be said that an extraordinary wind coupled with an unusual drought were proximate causes of the injury, still the fire was a material concurring cause, without which there would have been no damage to plaintiff, and defendant is liable under the established rules of law. Moore v. Townsend, 76 Minn. 64, 78 N. W. 880; Bibb B. C. Co. v. Atchison, T. & S. F. Ry. Co. 94 Minn. 269, 102 N. W. 709, 69 L.R.A. 509, 110 Am. St. 361, 3 Ann. Cas. 450; Campbell v. City of Stillwater, 32 Minn. 308, 20 N. W. 320, 50 Am. Rep. 567; Johnson v. Northwestern Tel. Exch. Co. 48 Minn. 433, 51 N. W. 225; McDowell v. Village of Preston, 104 Minn. 263, 116 N. W. 470, 18 L.R.A.(N.S.) 190; O'Connor v. Chicago, M. & St. P. Ry. Co. 163 Wis. 653, 158 N. W. 343. That the independent concurring cause was what is termed an act of God, does not alter the rule. Bibb v. Atchison, T. & S. F. Ry. Co. supra; Northwestern C. M. Co. v. Chicago, B. & Q. Ry. Co. 135 Minn. 363, 160 N. W. 1028; Sherm. & Red., Negligence, § 39; 22 R. C. L. 131.

Our attention is invited to a number of cases holding that if a fire has been spread beyond its natural limits by an unusual or extraordinary wind, carrying it to a place that would have been safe except for the wind, the person who set the fire is not liable because he could not reasonably have anticipated a wind of such a nature. Fent v. Ry. Co. 59 Ill. 349, 14 Am. Rep. 13; Marvin v. Ry. Co. 79 Wis. 140, 47 N. W. 1123, 11 L.R.A. 506; Hightower v. Ry. Co. 67 Mo. 726. These cases appear to be out of harmony with Krippner v. Biebl, 28 Minn. 139, 9 N. W. 671. They are also of doubtful application in view of our statute (G. S. 1913, § 4426), which creates liability irrespective of weather conditions, virtually makes railroad companies insurers against damage caused by fires set by their engines, Babcock v. Canadian Northern Ry. Co. 117 Minn. 434, 136 N. W. 275, Ann. Cas. 1913D, 924, and entirely eliminates the question of negligence. Trustees v. Chicago, M. & St. P. Ry. Co. 119

Minn. 181, 137 N. W. 970; Home Ins. Co. v. Chicago, St. P. M. & O. Ry. Co. supra, page 240, 178 N. W. 608; Chicago. & N. W. Ry. Co. v. Kendall, 186 Fed. 139, 108 C. C. A. 251.

6. The following proposition is stated in defendant's brief and relied on for a reversal:

"If plaintiff's property was damaged by a number of fires combining, one * * * being the fire pleaded * * * the others being of no responsible origin, but of such sufficient or such superior force that they would have produced the damage to plaintiff's property regardless of the fire pleaded, then defendant was not liable."

This proposition is based upon Cook v. Minneapolis, St. P. & S. S. M. Ry. Co. 98 Wis. 624, 74 N. W. 561, 40 L.R.A. 457, 67 Am. St. 830. In Farrell v. Minneapolis & R. R. Ry. Co. 121 Minn. 357, 141 N. W. 491, 45 L.R.A.(N.S.) 215, this court considered the Cook case, but refrained from expressing approval or disapproval of its doctrine. The supreme court of Michigan has referred to it as good law. Pluchak v. Crawford, 137 Mich. 509, 100 N. W. 765. The supreme court of Idaho says the opinion is logical and well reasoned, but the discussion is in a large measure theoretical and academic. Miller v. N. P. Ry. Co. 24 Idaho, 567, 135 Pac. 845, 48 L.R.A.(N.S.) 700, Ann. Cas. 1915C, 1214. Judge Thompson in his work on Negligence, Vol. 1, § 739, says that the conclusion reached is so clearly wrong as not to deserve discussion. If the Cook case merely decides that one who negligently sets a fire is not liable if another's property is damaged, unless it is made to appear that the fire was a material element in the destruction of the property, there can be no question about the soundness of the decision. But if it decides that if such fire combines with another of no responsible origin, and after the union of the two fires they destroy the property, and either fire independently of the other would have destroyed it, then, irrespective of whether the first fire was or was not a material factor in the destruction of the property, there is no liability, we are not prepared to adopt the doctrine as the law of this state. If a fire set by the engine of one railroad company unites with a fire set by the engine of another company, there is joint and several liability, even though either fire

would have destroyed plaintiff's property. But if the doctrine of the Cook case is applied and one of the fires is of unknown origin, there is no liability. G. S. 1913, § 4426, leaves no room for the application of a rule which would relieve a railroad company from liability under such circumstances. Moreover the reasoning of the court in McClellan v. St. Paul, M. & M. Ry. Co. 58 Minn. 104, 59 N. W. 978, leads to the conclusion that, regardless of the statute, there would be liability in such a case. We, therefore, hold that the trial court did not err in refusing to instruct the jury in accordance with the rule laid down in the Cook case.

In the foregoing discussion we have assumed, although it is doubtful, that the evidence was such that a foundation was laid for the application of the rule if it was otherwise applicable.

7. The contention that the Director General of Railroads is the only proper defendant is contrary to the holding in Lavalle v. Northern Pac. Ry. Co. 143 Minn. 74, 172 N. W. 918, 4 L.R.A. 1659; Gowan v. McAdoo, 143 Minn. 227, 173 N. W. 440; Palyo v. Northern Pacific Ry. Co. 144 Minn. 398, 175 N. W. 687; and Ringquist v. Duluth, M. & N. Ry. Co. 145 Minn. 147, 176 N. W. 344.

The further contention that, when he is joined with a railroad company as a defendant, section 10 of the Federal Control Act (U. S. Comp. St. 1918, § 3115¾j) does not authorize an action against him, because it is in effect a suit against the United States authorized by the act only to enforce common-carrier liabilities, cannot be sustained. In the Palyo case, where it was held that the director general might be made defendant, the liability sought to be enforced was not a common-carrier liability. The Ringquist case, adhering to the views expressed in Palyo v. Northern Pacific Ry. Co. was a fire case. The provisions of the so-called Transportation Act of February 28, 1920, indicate pretty clearly that Congress did not intend, by section 10 of the Control Act, to limit the right to sue the director general to such causes of action as arise from his operation of the railroads as common carriers. See sections 202 and 206 of the later act.

We find no error requiring a reversal, and hence the order appealed from is affirmed.