## FARMERS BANK OF DUNN COUNTY v. ROY WOOLERY AND OTHERS.[1]

June 29, 1923.

No. 23,370.

**Deed was intended as mortgage.**

1. The evidence sustains the findings of the trial court that a deed given by the defendant Albert Woolery to his brother, the defendant Roy Woolery, was intended as a mortgage. This holding is made having in view the rule, announced in Young v. Baker, 128 Minn. 398, that evidence to prove a deed a mortgage must be clear, strong and convincing.

**Whether defendant was owner or prior mortgagee whose claim had been paid, may be litigated in forecloseure action.**

2. The general rule is that a mortgagee cannot litigate in his foreclosure action a title paramount to the title of the mortgagor. The plaintiff claims that a deed given by the defendant Albert Woolery to his brother the defendant Roy Woolery, was a mortgage. After the giving of the deed Albert Woolery gave to the plaintiff a mortgage, which this action is brought to foreclose, upon the property covered by the deed. The plaintiff claims that Roy Woolery received payment of the sums which he advanced, so that he held the naked legal title. It is *held* that these questions can be litigated in plaintiff's foreclosure action without offending the rule stated.

**Amendment of complaint.**

3. The complaint alleges that the deed was executed to defraud creditors and on a secret trust for the benefit of the grantor who was at all times the true owner. The court did not err in allowing an amendment, after the evidence was in, alleging in specific terms that

[1]Reported in 194 N. W. 759.

the deed was a mortgage; nor did it err, when it allowed such amendment, in not tendering the defendants an opportunity to offer further evidence upon the issue whether the deed was a mortgage.

**Finding sustained that mortgagee was paid.**

4. The evidence sustains a finding that the defendant Roy Woolery was repaid all sums expended by him and which the deed secured, and that he holds the naked legal title for the defendant Albert Woolery.

**Section 2301 does not prevent an absolute deed being a mortgage.**

5. An absolute deed may be a mortgage notwithstanding G. S. 1913, § 2301, which is a revenue measure, provides among other things that an instrument relating to real estate shall not be valid as security unless the fact that it was so intended and the amount of the debt are expressed in it.

Action in the district court for Faribault county to foreclose a mortgage and annul a prior deed from mortgagors, alleged to have been given to defraud creditors, and a sheriff's certificate of sale upon execution. The case was tried before Converse, J., acting as judge for the Seventeenth judicial district, who when plaintiff rested denied defendant Roy's motion to dismiss the action as to him, made findings and ordered judgment against defendants Albert and Harriet Louise for the amount due on the promissory note and for a foreclosure and sale of the premises. From an order denying their motions for a new trial and for amended findings, defendants appealed. Affirmed.

*Putnam & Carlson* and *Haycraft & McCune*, for appellants.

*Lancaster, Simpson, Junell & Dorsey* and *Hugh H. Barber*, for respondent.

DIBELL, J.

Action to foreclose a mortgage. There were findings for the plaintiff. The defendants appeal from the order denying their motion for a new trial.

1. In 1916 the defendant Albert Woolery, a brother of the defendant Roy Woolery, was the owner of 240 acres of land in Faribault county. A quarter section of it was subject to an annuity of

$275 payable to his mother. Albert was unsuccessful in his farming operations, his farm was mortgaged, he had a considerable floating indebtedness and he was discouraged and sick. In the fall he had a farm sale, and moved to North Dakota where he has since lived. In October, 1917, he conveyed the land to Roy. The deed was duly recorded. On June 28, 1920, he mortgaged the land to the plaintiff bank to secure $15,000. This is the mortgage under foreclosure.

The plaintiff claims that the deed to Roy was a mortgage. The court found that it was.

In July, 1917, Roy received a letter, now lost, from Albert. Testifying for himself, Roy reproduces it as follows:

"This letter was written on a common piece of paper with a lead pencil and it had nothing but just the one particular thing in that Albert refers to and he says this way, he says, 'Roy, I wish you would take that land down there and pay up what I owe. If there should be anything left, give it to my kids.' There was nothing else mentioned in the letter. It was addressed with a pencil, a lead pencil."

In October, 1917, Roy went to North Dakota taking with him, prepared for execution, the deed here in controversy which Albert executed when he was there. He and Albert went over the situation thoroughly. As we get it from their talk, it looked gloomy. There were encumbrances, and Albert had a floating debt. He could not work the farm. It was anticipated that he might not live long. Roy says he told him "I thought the better way would be if he would deed the land to me; that on account of my mother I would be willing to shoulder this load or use the credit that I had built up from year to year." This was after the brothers had considered together the situation of the Minnesota land. Continuing Roy testified:

Q. "What did he say about deeding it to you, and you carrying the loan?

A. "He says, 'I told you when I wrote you I wanted to do that.' And he says, 'All winter I was unable to get out of my bed. They had to feed me.' And he says, 'If I have another bad spell this

winter I cannot live. I want it that way.' We talked a great deal and we talked very little only about this here land and the debts that were against it and our own mother.

Q. "Well, now state whether or not he told you he would deed it.

A. "He said that was what he wanted to do and that was what he would do.

Q. "Well, now, was the land ever to be deeded back to him?

A. "No, he never asked me to redeed it to him.

Q. "Was it ever to be redeeded back to anybody?

A. " 'At the death of my mother,' he says, 'if there is anything left, give it to my children.' He says, 'I got a better thing right here in this butcher shop than on that farm.' And he says, 'I can handle this shop and I could not go out and work that farm if I had to.' "

There is evidence of admissions made by Roy from time to time that the land belonged to Albert, or that he was holding it for him. There is evidence that Roy said to one witness that "Albert really owned the land, that it stood in his [Roy's] name, that he had made a will protecting Albert in case of his death;" and to another that while the land "was in his name, it really belonged to Albert. * * * and that he had protected Albert in his will." Roy was successful in his farming operations and is apparently a man of force. It is an outstanding fact in the record that he had no thought of taking advantage of his brother, or making a profit from the transaction. He wanted to help, not hurt him, and was desirous that the land charged with an annuity in favor of his mother should not pass from the family. There was a substantial equity in the land, even before the advance in prices which soon followed. The deed recited a consideration of one dollar and other valid considerations. It was contemplated that Roy would take care of Albert's debts. Among these was a judgment for $400 or $500, known as the Barnes judgment, upon which an execution had been issued and a sale made to Roy on June 2, 1917. Roy did not purchase at the execution sale in order to get title away from Albert; and under the arrangement with Albert, made before the time of redemption expired, it is to be considered as a debt secured by the

deed. It can be said that the right acquired under the execution sale as between the brothers merged in the deed. We make particular mention of the execution sale in view of the claim of the defendants that Roy acquired title under it. Roy reiterates, and truthfully, that he intended no profit from his brother.

An attentive consideration of the evidence satisfies us that the trial court's finding of a mortgage relationship between the brothers is satisfactorily sustained. In reaching this result we have in mind that the evidence should be clear, strong and convincing. Young v. Baker, 128 Minn. 398, 151 N. W. 132. Upon the evidence it is a necessary holding that the deed was not in fact absolute. Roy was not to make a profitable bargain. The transaction was well found to constitute a mortgage.

2. The defendants invoke the rule that in a foreclosure of a mortgage the mortgagee cannot litigate an adverse title paramount to the title of the mortgagor. This is the well understood general rule. Dickerman Inv. Co. v. Oliver Iron Min. Co. 135 Minn. 254, 160 N. W. 776, and cases cited. The rule was early announced in Banning v. Bradford, 21 Minn. 308, 18 Am. Rep. 398. In Churchill v. Proctor, 31 Minn. 129, 16 N. W. 694, the court, referring to the Banning case, said the rule was not offended by joining in the foreclosure of a leasehold the owners of the fee who fraudulently conspired with the mortgagor and forfeited the leasehold for the nonpayment of rent; and that in such action relief might be had against the fraudulent forfeiture. And in Foster v. Johnson, 44 Minn. 290, 292, 46 N. W. 350, the court commenting on the rule said:

"Strictly, a prior mortgagee is not a proper party to an action by a junior mortgagee to foreclose his mortgage, because the proper object of the action is to bar the equities of the mortgagor and rights accruing subsequent to the mortgage. * * * But prior lienors may consent to become parties to such an action, or may be made such, where the object is to ascertain the extent of their claims, and to have the premises sold subject thereto, or absolutely to create a fund out of which the several encumbrances shall be paid in their order; but such purpose or object should clearly appear from the complaint."

Usually the mortgagee must foreclose the title mortgaged and be content with what his foreclosure gives him. Afterwards he may litigate its effect with those claiming paramount title. Here, if the transaction constituted a mortgage, Roy did not have a title paramount to that of Albert. He merely held the legal title as security for a debt. If the debt was in fact paid, Roy had nothing but the naked legal title. In such a situation it was proper to make Roy a party and have it determined whether the deed to him was in fact a mortgage. It seems that the plaintiff, through its mortgage, had a sufficient interest in the property to sustain an equitable action against Roy and Albert to determine the relative rights of the two; in effect to determine whether Roy was the owner, in which event the plaintiff had nothing by its mortgage, or a mortgagee, in which event it had a junior mortgage. If so there is no sufficient reason why the rights of Albert, if found to be a mortgagor, should not be foreclosed in the action which determined his right.

3. In the complaint the theory of fraud was advanced. It was alleged that the conveyance from Albert to Roy was under a secret trust of which Albert was the beneficiary, and that Albert was the actual and true owner. The trial court, upon consideration of the evidence, was of the view that the conveyance was not fraudulent, but that the relationship between Albert and Roy was that of mortgagor and mortgagee. Thereafter the plaintiff was permitted to amend its complaint by alleging that the conveyance from Albert to Roy was not absolute but "was for the purpose of securing Roy for any money he might invest in paying Albert's debts." Findings were afterwards made. The difference between proof showing a conveyance on a secret trust for the benefit of Albert, with an attendant agreement to satisfy his debts and hold the property for him, and proof showing a conveyance to be a mortgage, is not great. In no event were the parties misled, and, conceding the necessity of an amendment, there was no error in permitting one. Anderson v. Minneapolis, St. P. & S. S. M. Ry. Co. 146 Minn. 430, 179 N. W. 45; Radke v. Radke, 155 Minn. 333, 193 N. W. 461.

The defendants were given leave to present further evidence upon the state of the account between the two brothers. This offer they declined, largely, we take it, upon the ground that the theory of the action was erroneously changed by the allegation of a mortgage relationship. They now complain that they were not also given an opportunity to offer further proof upon the question of a mortgage relationship. They did not ask it. It is clear that the court proceeded upon the theory that all available evidence bearing upon the issue of mortgage or no mortgage had been presented. The record suggests that all evidence on the question has been produced. The court gave the defendants the opportunity of presenting additional evidence upon the question of whether the mortgage was paid, not in denial of the privilege of introducing further evidence upon the issue of whether there was a mortgage, which was not asked, but upon the assumption that there was no further evidence to produce. Counsel for the defendants were attentive to the interest of their clients, were in possession of their case, and were not misled by the omission of the court to suggest that they bring additional evidence of the absence of a mortgage relationship if they were possessed of any. If there was occasion for further testimony they saw it. We refer to this matter again at the close of the opinion.

4. The court found that Roy refunded some of his brother's debts by making new mortgages, that he paid some, that he received the proceeds of the farm, that all the advances which he made were repaid, and that he held the naked legal title. The evidence sustains the findings. This does not mean that the proceeds of the farm have paid the mortgages and Albert's floating debts, though some of the years when Roy operated it were prosperous ones and yielded profits. When Albert went to North Dakota there were mortgages aggregating $9,500 on the farm. Roy gave a mortgage for $6,500, taking up two of the mortgages. He gave another mortgage for $2,600. A mortgage of $3,000 existing at the time Albert went to North Dakota still remains. Roy gave his brother a mortgage for $2,628.37. It is not clear just what amount this mortgage secures. Altogether there appear of record between $14,-

000 and $15,000 of mortgages. None of the mortgagees are parties and they are not bound by the judgment which will be entered.

While the defendants declined the offered opportunity of producing evidence as to the status of the account between Roy and Albert, relying upon a theory of the case in which we do not agree with them, it does not follow that the exercise of their choice should preclude them from adducing additional evidence if it is at hand. We speak of this later.

5. Counsel for the defendants urge that there is now no equitable mortgage in Minnesota under a deed absolute in form because the statute provides that no instrument relating to real estate shall be valid as security "unless the fact that it is so intended and the amount of such debt are expressed therein." G. S. 1913, § 2301. The statute of which the quotation is a part is a revenue measure. It was not intended to have the far reaching effect claimed. In Engenmoen v. Lutroe, 153 Minn. 409, 190 N. W. 894, the point here made was substantially decided adversely to the contention of the defendants, or at least such a holding was forecast. We hold, in view of that case, and the general object of the revenue statute, that the omission to state that the instrument was intended as security and the amount of the debt secured does not prevent an absolute deed from being a mortgage in equity.

Upon the going down of the remittitur the defendants may apply within 20 days for an opportunity to present additional evidence as to the status of the account between Roy and Albert and whether Roy has now any lien by way of mortgage under the deed. If this request is made, with an assurance that such evidence is at hand, the court will doubtless be as free in granting the opportunity as it was in offering it before. It seems that the parties, if not satisfied with the finding, should be able to get together upon the condition of the account without much trouble. We gather that all the evidence procurable as to the nature of the deed from Albert to Roy was produced. It was exhaustive. If the defendants think otherwise, and make a substantial showing to the trial court, it still will be within its discretion to hear it.

Order affirmed.