**PUBLIC CITIZEN HEALTH RESEARCH GROUP, et al.,**
Plaintiffs,

v.

**Dr. Frank YOUNG, Commissioner, Food and Drug Administration, et al., Defendants.**

Civ. A. No. 82–1346 JGP.

United States District Court, District of Columbia.

Nov. 17, 1988.

Katherine Meyer, William B. Schultz and Alan B. Morrison, Washington, D.C., for plaintiffs.

Rozaline Avnet Lazarus, Dept. of Justice, Washington, D.C., for defendants.

R. Bruce Dickson, Washington, D.C., for Intervenor Aspirin Foundation.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

This case is before the Court on the plaintiffs' motion for award of attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C.A. § 2412.

### I

The plaintiffs filed this action in 1982 against the Food and Drug Administration (FDA) and contended that "[s]ince at least November 1981, [FDA] has been aware of strong evidence connecting the use of aspirin with Reye's Syndrome, a serious, and sometimes fatal, childhood disease." Complaint para. 1. They sought an "order directing the FDA to take necessary action to protect children against Reye's Syndrome. *Id.* Shortly thereafter, the plaintiffs moved for summary judgment requesting a determination that aspirin products were misbranded within the meaning of the Food, Drug and Cosmetic Act (FDC Act), 21 U.S.C.A. § 352, because their labels did not contain a warning that such products should not be used for children with chicken pox or during the flu season. In moving for summary judgment, the plaintiffs agreed that the "misbranding" of aspirin products could be cured if the manufacturers included a warning label on their products. The defendants opposed the motion and moved to dismiss or, in the alternative, for summary judgment, on the grounds of failure to exhaust and ripeness and because the agency action had not been unreasonably delayed.

The Court dismissed the case without prejudice noting that the plaintiffs had not demonstrated that the time taken by FDA in considering whether to require aspirin manufacturers to include a label warning of Reye's Syndrome was unreasonable and that the case was not ripe for judicial decision. Memorandum filed March 14, 1983. In reaching the first determination, the Court noted that, while the American Academy of Pediatrics (AAP) had originally supported the concept of labeling, in November 1982, the Executive Board of the AAP had advised the Department of Health and Human Services (HHS) that they "believe[d] labeling should be delayed until more conclusive evidence of the association of aspirin administration and Reye's Syndrome [was] shown by further investigation. *Id.* at 3–4. The Court also noted that "[s]ince the issue is now before the agency charged with the responsibility of maintaining and supervising the enforcement of the laws relating to drugs, the agency should be permitted to conduct its administrative proceedings in an orderly fashion without interference by the Court." *Id.* at 5–6.

The plaintiffs appealed and the Court of Appeals affirmed in part and remanded in part. *Public Citizen Health Research Group v. Commissioner Food & Drug Administration*, 238 U.S.App.D.C. 271, 740 F.2d 21 (1984). The appellate court agreed with this Court that the case was not ripe for adjudication, but held that when a petitioner asks the court to compel agency action on the grounds that such action has been unreasonably delayed, "the court should evaluate the pace of the agency decisional process." 238 U.S.App.D.C. at 285, 740 F.2d at 35.

After remand the plaintiffs undertook discovery on the issue of unreasonable delay. The plaintiffs note that five months after the Court of Appeals remanded the case, a Public Health Service Task Force study "showed that children with chicken pox or flu who are given aspirin are 12–25 times more likely to develop Reye's Syndrome than children with those diseases who are not given aspirin." Memorandum In Support Of Plaintiffs' Motion For Award Of Attorney's Fees (Plaintiffs' Memorandum) at 8–9. In January 1985, the Secretary of HHS announced that the results of the pilot study "show an association between the use of aspirin and the onset of Reye Syndrome in children and teenagers." *Id.* at 9. "[D]espite the fact that the FDA had stated in its Advance Notice of Proposed Rulemaking that it would immediately issue regulations requiring a warning label '[i]f warranted by new scientific information,' ... the Secretary merely called on the industry to use a warning label 'voluntarily.'" *Id.* at 9. "Subsequently, on March 15, 1985, representatives of the AAP testified before a Congressional committee that in view of the results of the pilot study, there was 'more reason then ever to warn the public, and especially young adolescents, about the association between aspirin ... and Reye's Syndrome.'" *Id.* at 9. "The AAP further testified that it questioned 'the effectiveness of voluntary labeling,' and that it was therefore in support of *requiring* aspirin manufacturers to use a warning label about Reye's Syndrome." *Id.* 9–10.

The plaintiffs filed a second motion for summary judgment on the grounds that the Secretary's (of HHS) decision to seek voluntary labeling amounted to a final decision not to require a label and that therefore, the plaintiffs' challenge was then ripe for review. While the motion was pending, "more than a year and a half after the pilot study results were reported, and on the basis of no new evidence," Plaintiffs' Memorandum at 11, the FDA issued a final rule requiring the following label on aspirin products:

> WARNING: Children and teenagers should not use this medicine for chicken pox or flu symptoms before a doctor is consulted about Reye Syndrome, a rare but serious disease.

51 Fed. Reg. 8180 (March 7, 1986). On March 19, 1986, the plaintiffs dismissed the action with prejudice, reserving only the issue of attorney's fees.

## II

The first question that must be addressed under the EAJA is whether the plaintiffs are the "prevailing parties" in this litigation. 28 U.S.C.A. § 2412(d)(1)(B). "A typical formulation is that 'plaintiffs may be considered to be "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation and footnote omitted, emphasis this Court's). In order to determine whether the plaintiffs prevailed, it is necessary to consider the relief they sought and compare that with the disposition in this case.

■ In their complaint the plaintiffs sought an order (1) declaring that aspirin-containing products, sold without a Reye's Syndrome warning are misbranded and (2) directing the FDA to require all manufacturers to place a warning label on aspirin products. With respect to the misbranding issue, neither this Court nor the Court of Appeals addressed the merits of that claim. Indeed, this Court held in its March 14, 1983 Memorandum that the misbranding

issue was not ripe for decision in advance of a determination on that issue by the agency. The Court of Appeals agreed. *Public Citizen Health Research Group v. Commissioner, Food & Drug Administration, supra.* Thus, with respect to the specific misbranding claim, the plaintiffs did not prevail since that issue was never decided.

■ On the second request for relief, the plaintiffs requested the Court to order the agency to require manufacturers to include a warning label on aspirin products and the defendants have now done so. Plaintiffs contend that the warning label "is basically the same as the one proposed by the Secretary three and a half years earlier, on September 20, 1982." Plaintiffs' Memorandum at 11. After considering the record in this case, this Court concludes that on that issue, the plaintiffs prevailed.

Defendants argue that, while it is true that a labeling regulation was issued, it contains a "sunset" provision whereby, absent further action by FDA, it will expire two years after its effective date. The defendants explain that the purpose of the sunset provision was to allow the completion of the main Public Health Service study of the connection between Reye's Syndrome and aspirin products. Thus, defendants state: "Hence, FDA has not acceded to, this Court has not ruled upon, and plaintiffs have not prevailed on their assertion that FDA has the requisite scientific information to make delay in requiring a Reye Syndrome warning label unreasonable." Federal Defendants' Memorandum In Opposition To Plaintiffs' Motion For Award Of Attorney's Fees (Defendants' Memorandum) at 8.

The Court cannot accept defendants' argument. Defendants cannot avoid attorney's fees by merely giving interim or temporary relief. Plaintiffs asked that the defendants be required to direct the manufacturers to place warning labels on aspirin products and that is what the defendants have done. The fact that the defendants have done so by, what may be called an interim rule, suggest that, but for the prodding and urging by the plaintiffs, the de-

fendants would have withheld any labeling action until the completion of the Public Health Service study, at least. The Court must also assume that the defendants would not have issued the regulation requiring labeling unless they determined that the position taken by the plaintiffs was substantially correct.

Furthermore, it would not help the defendants to argue that they would probably have promulgated the regulation in any event. *See Save Our Cumberland Mountains, Inc. v. Hodel,* 263 U.S.App.D.C. 409, 416–417, 826 F.2d 43, 50–51 (1987). "[A] party's litigation efforts need not be the demonstrably exclusive cause of the relief it sought; rather the party may receive an award for time spent on activities that served as a 'catalyst' or contributing factor to that result." *Id.,* U.S.App.D.C. at 417, F.2d at 51. *See also Environmental Defense Fund, Inc. v. EPA,* 230 U.S.App.D.C. 264, 716 F.2d 915 (1983).

It is reasonable to conclude based on the record in this case that absent the efforts of the plaintiffs the regulation would not have been promulgated in March 1986. While it is true that the defendants may have been awaiting the results of the Task Force study, the fact remains that, as plaintiffs point out, children were still suffering from the effects of Reye's Syndrome and that some of children may have escaped the illness if labels had been placed on aspirin products at an earlier date. Moreover, the labels do not state that children suffering from chicken pox or flu symptoms should not use aspirin products; it merely advises parents and children that if children have chicken pox or flu that they should consult a doctor before using aspirin. Thus, based on what is known at the present time, there was more than sufficient information available to the defendants to require the manufacturers of the product to attach a warning label.

The fact that the defendants realized the need for some kind of label is clear. First, the defendants have cited the Court to nothing which suggests that there is no connection between the use of aspirin products and Reye's Syndrome. The bulk of

the evidence suggest that there *may* be a connection and all that the present label does is to alert interested persons so that *they* may make an informed decision. Second, the defendants at first did not require labeling but sought to obtain the voluntary cooperation of the aspirin manufacturers. The fact that the defendants did so is an admission that some kind of warning or notice was advisable. It seems clear that the defendants' suggestion to the manufacturers was unsuccessful and that plaintiffs were correct; the only way to assure that the warning was provided to the public was by regulation. Again, the record is clear that, but for the efforts of the plaintiffs, the products would not have been labeled as early as March 1986.

The fact that the defendants may have been moving more slowly than was warranted was noted in the decision by the Court of Appeals. While that court upheld the ruling of this Court based on the doctrines of exhaustion and ripeness, the Court of Appeals was still concerned about the potential danger to children and the speed in which the agency was addressing the problem. Thus, the Court of Appeals remanded and directed this Court to "evaluate the pace of the agency decisional progress." *Public Citizen*, 238 U.S.App. D.C. at 285, 740 F.2d at 35. The Court of Appeals instructed further that:

> In deciding whether the pace of decision is unreasonably delayed, the court should consider the nature and extent of the interests prejudiced by delay, the agency justification for the pace of decision, and the context of the statutory scheme out of which the dispute arises. We stress that the present case places on the District Court a grave responsibility to ensure that the pace of agency action does not jeopardize the lives of hundreds of children."

*Id.*

In fairness to the defendants, the Court must note that at one point there were legitimate concerns as to whether a warning label should be placed on aspirin products and, if labeling was required, the nature of the warning. While it may be easy to look upon such a decision as merely a commercial decision by the manufacturers, that is not accurate. Early in the proceedings, it appeared that even the AAP had some misgivings about the labels and there was a concern that such labels might discourage parents and/or physicians from prescribing aspirin products where those products might be the most effective means of treating fever or other problems associated with chicken pox and flu. And while the plaintiffs may suggest that such a decision may be guided by commercial considerations; it must be remembered that the decision to label or not to label was to be made by the defendants, and not the manufacturers, after careful consideration of the views of all interested persons.

The record reflects that the entire process was pushed along by the actions of the plaintiffs in this suit, no doubt beginning in 1982. This Court concludes that in that sense the plaintiffs are the prevailing parties. It is abundantly clear that the action of the plaintiffs was the catalyst which prompted the defendants and perhaps the industry and the AAP to move as quickly as they did in addressing the problem. And, although the label regulation has a sunset clause the fact remains that while the interested parties or organizations continue their studies, parents and their children are at least warned that under certain circumstances, they should consult their physician before using aspirin products.

Plaintiffs are the prevailing parties.

### III

■ The Court's inquiry cannot stop here, however, since the next issue is whether the position of the defendants was substantially justified. The term "position of the defendants" refers to the arguments relied upon by the defendants in this litigation. *See Spencer v. N.L.R.B.*, 229 U.S. App.D.C. 225, 232–243, 712 F.2d 539, 546– 557 (1983). "Substantially justified" as used here "does not mean that the [defendants] must establish that [they] had a substantial probability of prevailing on the merits ... Rather, the legislative history of the EAJA indicates that 'the test should

... be slightly more stringent than "one of reasonableness." ' " *Environmental Defense Fund, supra,* 230 U.S.App.D.C. at 269, 716 F.2d at 920 (citing to *Spencer* ).

In the instant case the Court concludes that the defendants' position was substantially justified through the date of this Court's decision on the plaintiffs' first motion for summary judgment and the resulting decision by the Court of Appeals. As observed earlier, this Court concluded that the case should be dismissed for lack of ripeness. The Court of Appeals agreed but remanded on the issue of agency delay. The Court notes also that up to that point, even the AAP had some reservations about the warning notice requirement absent further consideration or study. But once the results of the Public Health Service Task Force study revealed that certain children who were given aspirin products were more likely to develop Reye's Syndrome than children not given aspirin, and a representative of the AAP testified that there was reason to warn the public, the position of the defendants was no longer substantially justified because defendants had no information contrary to the above representations. It was at or about this time that the defendants then sought to encourage the manufacturers to agree to place warning labels on aspirin products. Even then the defendants did not issue a regulation requiring the warning labels although by that time they must have been in agreement that some form of label was required. Notwithstanding that background, a final rule was not issued until after the plaintiffs had filed a second motion for summary judgment on the grounds that the Secretary's decision seeking "voluntary" compliance was a final decision not to require a label.

In sum, the Court concludes that for a portion of the time the defendants' litigating position was substantially justified, but that ceased in late 1984 or early 1985. It is clear that plaintiffs are entitled to attorney's fees from at least that point in time.

The problem presented, however, is that limiting the plaintiffs to fees for that period of time does not reflect the full measure of the services they performed. It is clear that the results obtained by the plaintiffs due to the filing of this action came about not merely because of any action they took in late 1984 or early 1985, but because of the original filing of the suit in which they sought an order directing the defendants to require manufacturers to place warning labels on aspirin products.

## IV

■ In calculating the amount of the fees to be awarded, the Court is guided by the decision in *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 641 F.2d 880 (1980). As that court noted, "[a]ny fee-setting inquiry begins with the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly rate. The figure generated by that computation is the basic fee from which a trial judge should work." *Copeland,* 205 U.S.App.D.C. at 401, 641 F.2d at 891. Compensation is normally not given for time spent on litigating claims upon which the plaintiffs did not ultimately prevail. *Id.,* 205 U.S.App.D.C. at 401–402, 641 F.2d at 891–892. *See also, National Association of Concerned Veterans v. Secretary of Defense,* 219 U.S.App.D.C. 94, 102, 675 F.2d 1319, 1327 (1982). "A district judge must take care not to reduce a fee award arbitrarily simply because a plaintiff did not prevail under one or more of these legal theories. No reduction in fee is appropriate where the 'issue was all part and parcel of one matter,' but only when the claims asserted 'are truly fractionable.' " *Copeland,* 205 U.S.App.D.C. at 402, n. 18, 641 F.2d at 892, n. 18 (citations omitted).

As was noted above, almost every action by the plaintiffs contributed to the final result reached in this controversy, that is, the claims were truly "part and parcel of one matter." For example, even though the plaintiffs did not prevail on their first motion for summary judgment, and did not prevail before the Court of Appeals, that motion ultimately led to the Court of Appeals remanding the case on the agency delay issue, and it was plaintiffs' pursuit of that issue which led to the result reached in this litigation.

■ Plaintiffs have requested that attorney's fees be awarded for services rendered by Katherine A. Meyer, William B. Schultz and Alan B. Morrison. The defendants object to any award for Mr. Schultz or Mr. Morrison on the grounds that their affidavits are too vague and that there is no way to determine whether the work performed was duplicative of work performed by Ms. Meyer or each other. This Court agrees that in their present form, the Morrison and Schultz affidavits are not subject to careful scrutiny, so it will deny so much of the claim as is based on their present affidavits, but without prejudice to both attorneys to submit a more detailed affidavit within 30 days of the filing of this Memorandum.

With respect to the fees claimed for the services rendered by Ms. Meyer, while the affidavit does not break down the claim "minute by minute", it is sufficient for the purpose of awarding fees. The Court notes, however, that in the event Morrison and Schultz submit a claim which may overlap that of Meyer it will be necessary for them to set forth their claim with sufficient specificity in order that the Court can distinguish their claim from the claim submitted by Ms. Meyer.

■ The hourly rate claimed is $89.73. The defendants do not challenge that figure and the Court concludes that it is reasonable. After reviewing the hours claimed, the Court concludes that the hours are reasonable and notes that, even with respect to issues on which the plaintiffs may not have prevailed, those issues were so intertwined with the issue on which the plaintiffs are the prevailing parties that it is impossible to separate them. Accordingly, the Court concludes that Ms. Meyer should be compensated at the rate of $89.73 per hour for 413 hours, for total compensation of $37,058.49.

The Court will not withhold entering an Order for fees based on the services rendered by Ms. Meyer, but such action is without prejudice to plaintiffs filing additional affidavits for services rendered by Mr. Morrison and Mr. Schultz. Plaintiffs are not required to submit a further claim, but in the event they determine to do so, the claim must be filed within 30 days, that is on or before the date set forth in the accompanying order. The accompanying Order is not a final order. For purposes of any appeal, a final order will be entered after the plaintiffs have had an opportunity to supplement their claim as set forth above. In the event the plaintiff decide not to request further payment, they should immediately advise the Court by memorandum and a final order will be filed.

An appropriate order has been filed.

### ORDER

This comes before the Court on the plaintiffs' motion for attorney's fees. After giving careful consideration to the motion and the opposition thereto, together with the record in this case, the Court concludes that the motion should be granted for the reasons set forth in the accompanying Memorandum.

Fees are granted with respect to the services rendered by Ms. Katherine A. Meyer. Fees requested for services rendered by Mr. Alan B. Morrison and Mr. William B. Schultz are denied without prejudice to the plaintiffs submitting supplemental affidavits for those services and provided such affidavits are submitted within the time frame provided in this order.

It is hereby

ORDERED that the plaintiffs' motion for attorney's fees is granted, and it is further

ORDERED that the plaintiffs are awarded attorney's fees for services rendered by Ms. Katherine A. Meyer in the amount of $37,058.49, and it is further

ORDERED that the fees request for services rendered by Mr. Alan B. Morrison and Mr. William B. Schultz is denied without prejudice to the plaintiffs submitting supplemental affidavits for those services provided that the supplemental affidavits are filed on or before December 20, 1988, and in the event no additional claim is submitted on or before that date, the Court

will deem that portion of the claim withdrawn.