PUBLIC CITIZEN HEALTH RESEARCH GROUP, et al., Appellees,

v.

Dr. Frank YOUNG, Commissioner, Food and Drug Administration, et al., Appellant.

No. 89–5055.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1990.

Decided July 31, 1990.

---

Edward R. Cohen, Atty., Dept. of Justice, for appellants. Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., William Kanter and Victoria F. Nourse, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellants. Robert K. Rasmussen, Nashville, Tenn., also entered an appearance for appellants.

Katherine A. Meyer, with whom Alan B. Morrison, Washington, D.C., was on the brief, for appellees. William B. Schultz and R. Bruce Dickson, Washington, D.C., also entered appearances for appellees.

Before BUCKLEY, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

We review here an award of attorneys' fees incurred by Public Citizen Health Research Group in an effort to force the Food & Drug Administration to require a warning of Reye's Syndrome on aspirin labels. The FDA eventually imposed the requirement, and the district court found that even though the lawsuit was never decided on the merits, it was enough of a "catalyst" for Public Citizen to be considered a "prevailing party" under EAJA, the Equal Access to Justice Act, 28 U.S.C. § 2412 (1988). We affirm that finding, but must reverse his award of fees on two other points. First, in finding the government's position

not "substantially justified" after 1984, the district court used a less generous standard (to the government) than is demanded by the Supreme Court's decision in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Second, even though the court found that the government's position *was* substantially justified before 1985, it awarded fees incurred in that period.

## I

Reye's Syndrome is a rare illness that usually afflicts children and teenagers recovering from viral infections. It causes death in 20–30 percent of all cases, and permanent brain damage in many others. See *Public Citizen Health Research Group v. Commissioner, Food & Drug Admin.*, 740 F.2d 21, 24 (D.C.Cir.1984). In March 1982 Public Citizen filed a "citizen's petition" with the FDA (a branch of the Department of Health and Human Services) demanding that it require warning labels. Public Citizen relied on three state studies finding that a class of chemicals called salicylates (which are contained in aspirin) might tend to cause the disease. See *id.* Unhappy with the FDA's pace in dealing with the petition, Public Citizen filed suit in May 1982, seeking a court order compelling the FDA to require the warning. Its substantive theory was that unlabeled aspirin containers were "misbranded" under the Food, Drug & Cosmetic Act, 21 U.S.C. § 352(f) (1988), for want of "adequate warnings against use ... by children where its use may be dangerous to health," *id.* In the alternative, Public Citizen sought an injunction requiring the FDA to respond to its petition within 30 days.

A good deal of backing and filling ensued. Three months after Public Citizen brought suit, the Secretary of HHS issued a press release indicating that he would propose requiring a warning label on products with salicylates. Public Citizen then moved for summary judgment. A month later, the Secretary announced that he was initiating the process of requiring a warning by submitting an appropriate regula-

tion to OMB for review. A little later, however, while the summary judgment motion was still pending, the Secretary reversed field on the basis of a switch by the American Academy of Pediatrics, which dropped its earlier support for a mandatory warning label and instead suggested that more evidence was needed. At this point the FDA decided to commission a comprehensive study.

The district court proceeded to dismiss the suit for want of both ripeness and finality in the FDA's actions. The court of appeals affirmed the dismissal on the "misbranding" claim but remanded for the district court to consider Public Citizen's claim of unreasonable delay. See *Public Citizen*, 740 F.2d at 27, 35–36.

In January 1985 the FDA released the results of a pilot study designed as the first phase of the comprehensive inquiry. Although the pilot was on a small scale and suffered from other methodological frailties, a committee of the Institute of Medicine (an offshoot of the National Academy of Sciences) found that the data showed a "strong association" between Reye's Syndrome and the use of aspirin. The Secretary renewed his decision to wait for the results of the final study, but asked the aspirin industry to label its aspirin products voluntarily in the meantime.

Two months later Public Citizen filed a new motion for summary judgment, and the FDA countered with its own. The court heard oral argument in September 1985, and in December, while the motions were still undecided, the FDA proposed a warning requirement. It adopted the regulation in March 1986 (effective June 5, 1986), and Public Citizen moved to have its complaint dismissed, reserving only the issue of attorneys' fees.

The study initiated in 1982 was completed in November 1986. It confirmed the pilot study, finding a "large, statistically significant association between Reye's syndrome in children and teenagers and the ingestion of aspirin during previous illnesses." See *Labeling for Oral and Rectal Over-the-Counter Aspirin and Aspirin-Containing Drug Products; Reye Syn-*

*drome Warning,* 53 Fed.Reg. 21,633 (June 9, 1988).

## II

The Equal Access to Justice Act allows a limited class of "prevailing" parties—ones that aren't too wealthy—to recover attorneys' fees in suits against the United States unless the United States's position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A) (1988). We first address the conclusion that plaintiff prevailed, then the issues revolving around the court's finding that the government was "substantially justified" until the end of 1984 but not thereafter.

### A. *Prevailing party*

■ A party need not procure a final judgment on the merits in order to be considered a "prevailing party" for fee-shifting purposes. It is enough that the lawsuit was a "causal, necessary, or substantial factor in obtaining the result" plaintiff sought. *Commissioners Court of Medina County, Texas v. United States,* 683 F.2d 435, 442 (D.C.Cir.1982); see also *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987) (dictum) (citing *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980) (involving consent decree)). This construction of "prevailing party" is consistent with one of Congress's purposes in enacting EAJA: to compensate plaintiffs who cause the government to conform to the law. See H.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S. CODE CONG. & ADMIN.NEWS 4953, 4984, 4988–89. Of course there is a limit; the Fourth Circuit has held that a plaintiff who filed suit in a court without jurisdiction cannot recover no matter how effective the suit might have been in changing agency conduct, *Finn v. U.S.,* 856 F.2d 606, 608 (4th Cir. 1988), but here we have no such extreme.

■ The government would sweep the whole catalyst theory aside on the ground that it cannot apply where there has been a judicial determination on the merits. Normally, of course, that is true; such a decision would itself determine who was pre-

vailing and make the catalyst notion irrelevant. But here, despite its loss on the misbranding claim before this court, Public Citizen on remand was pressing claims that no court had accepted or rejected—the delay claim, on which we remanded, and a revived misbranding claim premised on the argument that the FDA's voluntary labelling program provided the final agency action that had been missing before. Thus there was no decision for or against plaintiff that was enough to moot the catalyst issue.

■ We review the district court's finding of causation under the "clearly erroneous" standard, see *Perket v. Sec'y of Health and Human Services,* 905 F.2d 129, 132 (6th Cir.1990); *Sablan v. Dep't of Finance of N. Mariana Islands,* 856 F.2d 1317, 1324 (9th Cir.1988); *Fields v. City of Tarpon Springs,* 721 F.2d 318, 322 (11th Cir.1983), although there is an odd twist to the district court's job. In assessing the government's motivation, the court must inquire into the government's perception of what it—the court—was about to do. The court thus looks at its own image reflected in the government's eye. As with all mirror-gazing, there is a risk of being unduly taken with what you see. Nonetheless, as for other questions of fact the district court is better located to make the judgment than we, so "clearly erroneous" makes sense.

The district court started its discussion of causation by quoting the Supreme Court's statement in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), that plaintiffs "may be considered to be 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit." See 700 F.Supp. 581, 583 (D.D.C.1988) (emphasis added by district court). This of course does not focus at all on the pertinent problem—whether there was enough of a causal link between the plaintiff's lawsuit and the conceded attainment of the desired benefit. On that subject, the district court made what we hold to be the necessary finding—

that "absent the efforts of the plaintiffs the regulation would not have been promulgated in March 1986." *Id.* at 584. But it did so only after hinting at adherence to too lax a standard.

■ We can find no basis for any standard laxer than tort law's traditional minimum, "but for" causation, restated for this context: the claimant must show that it is more probable than not that the government would not have performed the desired act absent the lawsuit. See *Environmental Defense Fund, Inc. v. EPA,* 716 F.2d at 919 ("but for this litigation"); *Miller v. Staats,* 706 F.2d 336, 341 n. 32 (D.C.Cir. 1983) (articulating "but for" test); *Waterman Steamship Corp. v. Maritime Subsidy Board,* 901 F.2d 1119, 1124 (D.C.Cir. 1990); see also *Sablan,* 856 F.2d at 1324–25 (requiring a "clear, causal relationship"); *Tarpon Springs,* 721 F.2d at 321 ("a causal link that prompted some remedial action").

It is quite true that in *Save Our Cumberland Mountains Inc. v. Hodel,* 826 F.2d 43 (D.C.Cir.1987), we said that the lawsuit "need not be the demonstrably exclusive cause of the relief it sought; rather, the party may receive an award for time spent on activities that served as a 'catalyst' or contributing factor to that result." *Id.* at 51. The district court relied on that to support its peripheral statement that "it would not help the defendants to argue that they probably would have promulgated the regulation in any event." 700 F.Supp. at 584. But the *Cumberland Mountains* statement that a cause need not be "exclusive" is far from an assertion that it need not reach the "but for" level. Ever since the first cause brought the world into being, no event has had a single cause.

The requirement of "but for" causation appears to be relaxed in torts only in two sets of cases. First are those where the law requires multiple negligent defendants,[1] rather than the innocent plaintiff, to bear the risk of uncertainty as to which defendant is causally responsible. *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1

(1948); *Sindell v. Abbott Labs.,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). These do not parallel the catalyst issue. Second, there are instances where a natural or otherwise innocent force coincides with a tortious one to bring about a loss and each cause was enough alone to have caused the injury. The classic instance is two such fires burning down a building. *Anderson v. Minneapolis, St. P. & S.S.M. Ry. Co.,* 146 Minn. 430, 179 N.W. 45 (1920). Here some but not all courts impose liability. 2 Harper, James & Gray, The Law of Torts § 20.3 at 115–17 (1986). While the rationale is obscure, see *id.,* there is at least a symmetry with the limitation of liability under the concept of proximate cause. Just as the latter excuses the defendant when a fluke extends the consequences of his negligence, so the *Anderson* rule denies him any benefit when a fluke renders his negligence causally redundant. A recent decision of the Sixth Circuit may be an implicit adoption of the *Anderson* rule in the EAJA context. It found a disability claimant who had two sufficient causes for victory, his lawsuit and an act passed pending his appeal, to be a "prevailing party" under EAJA. *Perket,* 905 F.2d 129, 132–135 (citing and discussing cases). The court held that the government should not benefit from the "fortuitous" passage of favorable legislation, *id.* at 133, which we think qualifies as a fluke. Here, by contrast, there is no suggestion that the other forces tending to bring about the agency's decision—congressional pressure and increased agency skepticism about the voluntary warnings—were in any way fluky, and thus we see no call for relaxing the conventional standard.

Plaintiff notes that despite many switches after the filing of the lawsuit, the key switch—the final decision to mandate warnings—came just eleven weeks after oral argument on the cross-motions for summary judgment, an oral argument in which the district court gave Public Citizen's view a very hospitable reception. See Transcript of Cross Motions for Summary

---

1. "Negligent" here serves to cover any necessary ingredients of liability apart from causation, e.g., the (non-causation) elements of strict liability for defective products.

Judgment, *Public Citizen Health Research Group v. Commissioner, FDA,* Docket No. CV 82–1346 (Sept. 30, 1985). The sequence is highly suggestive.

The government nevertheless faults the district court's inference of causality by pointing out a discrepancy in its discussion of misbranding and labelling. While the court said that Public Citizen had not prevailed on its misbranding claim, it purported to find that it did so on a "labelling" claim. 700 F.Supp. at 584. In fact there is no labelling claim per se; correct labelling was simply the remedy Public Citizen sought for the alleged misbranding. On that claim, as we have noted, Public Citizen was attempting a revival in its motion for summary judgment. Despite the confusion, the district court appears to have recognized the claim as retaining some form of life.

This is all the more true in light of Public Citizen's second claim—that the FDA was delaying unreasonably. This court had hinted at the claim's having great strength, see *Public Citizen,* 740 F.2d at 34, and the district court clearly recognized its healthy state, see 700 F.Supp. at 584, 585. In fact, the misbranding and delay claims overlap heavily. The FDA would most likely have been guilty of actionable delay only if the evidence pointed conclusively to an association between Reye's Syndrome and aspirin. As a matter of strategy, moreover, a party would normally seek judicial intervention against delay only if it thought either that the agency would come out its way or that any failure to do so would be reversible. A party will rarely rush its own defeat. Thus Public Citizen's basic showing still stands: only eleven weeks after oral argument the FDA reversed its earlier decision to await the results of the final study and promulgated a mandatory labelling regulation.

Although chronology is important in determining causation, see *Environmental Defense Fund,* 716 F.2d at 919; see also *Sablan,* 856 F.2d at 1325–26, it is by no means dispositive; the government rightly cautions against the *post hoc ergo propter hoc* fallacy. *Cumberland Mountains,* 826 F.2d at 51, contains broad language suggesting that a lawsuit followed by agency action is always strong evidence of causation, but what made that true there, and in the cases cited by the court, was the absence of alternative explanations. When the government asserts that its decision was driven by forces other than the lawsuit, the task is to compare their relative force; how likely is it that the others would have done the job alone?

The FDA claims that two factors extraneous to the litigation led it to issue the mandatory labelling regulations earlier than it had originally planned: the FDA was being pressured from Congress to move more quickly, and the voluntary labels were causing confusion among consumers because of a lack of uniformity. The legislative action was hardly overpowering. It consisted only of a subcommittee hearing in March 1985, see, e.g., J.A. 158–72, and the introduction of bills, two in February 1985 and one in October 1985, that would have required warning labels, see *Proposed Labelling for Oral Aspirin-Containing Drug Products,* 50 Fed.Reg. 51,400, 51,402/1 (Dec. 17, 1985). And the district court presumably discounted the government's suggestion in December 1985 that consumers were confused by the voluntary labelling; the argument was a complete reversal, unexplained by any new data, of its claim at oral argument that the voluntary labelling program was working wonderfully. Compare Transcript of Cross Motions for Summary Judgment, No. CV 82–1346, *Public Citizen Health Research Group v. Hayes,* Sept. 30, 1985, pages 22–25 (extolling the virtues of the voluntary labelling program); *id.* at 22:4–5 ("the government is pleased with that voluntary program") with *Proposed Labelling,* 50 Fed.Reg. at 51,401–02 (noting that different labels are "likely to be somewhat confusing"). We cannot say that the district court finding was clearly erroneous.

### B. *Substantially justified*

■ Although we uphold the district court's determination that Public Citizen prevailed in this litigation, we must remand for it to reassess whether the government's litigating position was substantially justi-

fied. In finding that the government's position was not, the district court erroneously relied on a test adopted by this circuit ("slightly more stringent than 'one of reasonableness,'" *Public Citizen,* 700 F.Supp. at 586 (quoting *Environmental Defense Fund,* 716 F.2d at 920)) that had been explicitly disapproved by the Supreme Court five months before the district court's opinion issued. See *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988) (singling out the D.C. Circuit's rule for disapproval as out of step with the vast majority of circuits). The correct standard under *Pierce* is whether there was a reasonable basis in fact and law for the government's litigating position. 108 S.Ct. at 2550. On remand, the district court should reassess whether the government's litigating position was substantially justified in light of this less strict standard.

■ Even if the district court ultimately concludes that the government's litigating position was not substantially justified, it may not allow Public Citizen to recover for fees incurred prior to 1985. The district court found (even under the stricter test disapproved in *Pierce* ) that the government's litigating position *was* substantially justified until "late 1984 or early 1985" because prior to that date (when the American Association of Pediatrics published the results of its pilot study) the HHS had before it conflicting expert opinions concerning the nature of the association between Reye's Syndrome and aspirin. 700 F.Supp. at 586. It nevertheless awarded fees for the period before 1985, reasoning that to award only a fraction of Public Citizen's total fees would "not reflect the full measure of the services they performed" because, according to the district court, all of Public Citizen's actions contributed to the defendant's change in behavior. *Id.*

■ The district court's award of attorneys' fees prior to 1985 was thus premised on the notion that *all* of Public Citizen's actions in some way caused the ultimate success on the merits. EAJA, however, demands more than conventional fee-shifting statutes. Under EAJA fees are reimbursable only if the government not only lost but had no reasonable basis in law and fact for taking the position it took. See *Pierce,* 108 S.Ct. at 2550; *Battles Farm Co. v. Pierce,* 806 F.2d 1098, 1101 (D.C.Cir. 1986) (describing EAJA as an "anti-bully" law). In *Leeward Auto Wreckers, Inc. v. NLRB,* 841 F.2d 1143 (D.C.Cir.1988), we made clear that if the government was substantially justified at first, and it then lost "the protective mantle of 'substantial justification,'" plaintiffs could only recover fees incurred after the loss of justification. *Id.* at 1149. Here, on the basis of the division of viewpoint in the medical community as to the need for further study, the district court made an undisputed finding that the government's litigating position *was* substantially justified before 1985. 700 F.Supp. at 586; see also *Pierce,* 108 S.Ct. at 2546–49 (district court decision on substantial justification reviewable only for abuse of discretion). It therefore should not have awarded fees for that period.

The district court may have thought it was without power to sever the collectible from the uncollectible fees in light of our decision in *Copeland v. Marshall,* 641 F.2d 880, 892 n. 19 (D.C.Cir.1980) (en banc). See 700 F.Supp. at 586. There we stated that a district judge should not reduce the award for unsuccessful theories if the " 'issue was all part and parcel of one matter.' " *Copeland,* 641 F.2d at 892 n. 18 (quoting *Lamphere v. Brown Univ.,* 610 F.2d 46, 47 (1st Cir.1979)); see also *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983) (no fees awardable on unsuccessful claims which are "distinct in all respects from [the] successful claims"). But that rule arises out of the *Hensley* Court's evident concern about the difficulty of calculating what percentage of the plaintiffs' success was based on each cause of action. See 461 U.S. at 438–40, 103 S.Ct. at 1942–43. No such problem applies where the task is only to say which fees were incurred before and which after a certain time.

### III

We uphold the district court's determination that absent Public Citizen's suit the

FDA would not have promulgated its regulation as early as March 1986. We reverse its award of attorneys' fees incurred prior to 1985 because the government's litigating position was substantially justified at least until that point. We remand for the district court to reassess whether the government's litigating position was substantially justified after 1984 under the standard announced in *Pierce*.

*So ordered.*