NATURAL RESOURCES DEFENSE
COUNCIL, INC. et al.,
Plaintiffs,

v.

Manuel LUJAN, Jr., et al., Defendants.

Civ. A. No. 82–2763 (WBB).

United States District Court,
District of Columbia.

Aug. 6, 1992.

See also 716 F.Supp. 632, 787 F.Supp. 231, 815 F.Supp. 454.

Timothy Biddle, Washington, DC, for Nat. Coal Ass'n, intervenor. Steven P. Quarles, Crowell and Moring, Washington, DC, for State of Wyo., intervenor.

Eugene D. Gulland, Coving and Burling, Washington, DC, for Shell Oil Co., intervenor.

Glenn P. Sugameli, National Wildlife Federation, Washington, DC, for plaintiff National Wildlife Federation.

Melinda Taylor, National Audubon Soc., Washington, DC, for plaintiff Nat. Audubon Soc.

Johanna H. Wald, Natural Resources Defense Council, Inc., William S. Curtiss, Sierra Club Legal Defense Fund, Inc., San Francisco, CA, for plaintiffs.

## MEMORANDUM AND ORDER

BRYANT, Senior District Judge.

The question before this court is whether or not plaintiffs are entitled under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1988) ("EAJA"), to attorneys' fees and expenses incurred in litigating counts one and two of their eleven-count Complaint of September 28, 1982 ("Complaint").

### Background

On July 30, 1982, the Department of the Interior promulgated regulations, effective August 30, 1982, amending aspects of the 1979 Federal Coal Management Program: in

particular the regulations governing coal management and leasing, 47 Fed.Reg. 33,114 (1982) (codified at 43 C.F.R. § 3400), and those concerning coal exploration and mining operations, 47 Fed.Reg. 33,154 (1982) (codified at 30 C.F.R. § 211).

Among the notable changes to the 1979 Program, the new regulations eased the requirements for "diligent development" of federally leased coal lands, reducing the "commercial quantities" of coal that must be mined each year from 2.5% to 1% of estimated total deposits. 47 Fed.Reg. 33,157 (1982). The earlier regulations nominally sought a balance between the quantity of federal coal leased and projected demand for production.[1] The new regulations openly aimed to "permit enough leasing to approximate the demand for federal coal *reserves.*" 47 Fed.Reg. 33,-115 (1982) (emphasis added). Taken as a whole, the 1982 regulations seemed to express a new policy that considered it desirable to shift control of a portion of federal coal reserves from the public to private industry.

Plaintiffs feared the 1982 changes would permit mining on lands previously considered too delicate. The new regulations did not explicitly require that, where reclamation pursuant to the requirements of the Surface Mining Control and Reclamation Act, 30 U.S.C. §§ 1201 *et seq.* (1988) ("SMCRA") proved technologically or economically unfeasible, such areas be designated as "unsuitable" for leasing. 30 U.S.C. § 1272(a)(2); Complaint at 31. The new regulations reduced public opportunity to comment on the application of the unsuitability criteria. Complaint at 34. The new regulations also appeared to exempt existing leases and lands subject to preference right lease applications from unsuitability review entirely. Complaint at 33. Plaintiffs anticipated that these and other changes would lead to "excessive leasing ... and the mining, transportation and use of that coal will cause significant socio-economic, cultural, and environmental impacts to the land containing federal coal deposits and to surrounding areas." Complaint at 10. Plaintiffs filed their Complaint

seeking, among other relief, to enjoin implementation of the 1982 regulations.

### The Claims At Issue

Under the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 *et seq.* (1988) ("NEPA"), federal agencies must include an Environmental Impact Statement ("EIS") in every recommendation or report on "proposals for legislation or other major Federal actions significantly affecting the quality of the human environment...." 42 U.S.C. § 4332(2)(C). Regulations issued under NEPA by the Council on Environmental Quality ("CEQ") indicate "[a]doption of official policy, such as rules, regulations, and interpretations" may qualify as "major Federal action." 40 C.F.R. § 1508.18(b)(1) (1987).

CEQ regulations require an agency contemplating "major Federal action" to either prepare an EIS or to make a finding that the action will have "no significant impact" on the human environment. 40 C.F.R. § 1501.-4(e). To provide a basis for that choice, the agency must prepare an Environmental Assessment ("EA") "that serves to ... [b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact." 40 C.F.R. § 1508.9(a).

In addition, CEQ regulations require an agency to prepare a *supplemental* EIS if "[t]he agency makes substantial changes in the proposed action that are relevant to environmental concerns; or ... [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1).

Count one of plaintiff's Complaint alleged that the Department of the Interior's 1982 changes in the 1979 Federal Coal Management Program were "major Federal actions significantly affecting the quality of the human environment," making the Department's failure to issue an accompanying EIS a violation of 42 U.S.C. § 4332(2)(C). Count one also alleged two separate reasons why the 1982 changes would require a *supplemental*

---

1. Although in 1980, for example, only 12% of leased coal lands were actually in production.

EIS under the relevant CEQ regulations. First, plaintiffs alleged that the changes were "substantial and bear directly on the location and amount of coal lands that are likely to be leased." Complaint at 25. Second, plaintiffs alleged that "[t]here have been significant new circumstances and information relevant to environmental concerns and bearing on the federal coal leasing program and the new regulations since the EIS on the 1979 coal leasing program." *Id.* at 25. Some of this new information is allegedly included in a 1981 report by the Office of Technology Assessment ("OTA") entitled *An Assessment of Development and Production Potential of Federal Coal Leases. Id.*

Count two alleged that the Department issued an inadequate EA that could not lawfully serve as the basis for a determination that no EIS was required. "Had defendants prepared an adequate EA, it would have revealed that the proposed changes would result in significant adverse impacts to the quality of the human environment." *Id.* at 27.

Defendants claimed that the 1982 changes in the coal leasing program were modest, insufficient to trigger the mandatory requirements of NEPA and the CEQ regulations.[2] Defendants argued that a pre-existing, 1979 EIS "more than adequately addresses the 1982 amendments and no significant new information became available requiring supplementation of the [1979] EIS." Defendants' Memorandum in Support of Their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, at 23 (Aug. 26, 1983).

However, on September 4, 1984 the Department of the Interior gave notice of its intention to prepare a Supplemental EIS for the 1979 EIS, coincident with a general review of the Federal Coal Management Program. 49 Fed.Reg. 34,976 (1984). In October 1985 the Department issued a Final Supplemental EIS. The Department also made a series of decisions regarding the Coal Management Program which were embodied in a Secretarial Issue Document ("SID"). The parties to the present suit agreed that the preparation of the Final Supplemental EIS and the SID, as well as other actions and decisions of the Department of the Interior, "substantially satisfy Plaintiffs' claims in Counts I ('Failure to Prepare an Environmental Impact Statement'), [and] II ('Failure to Prepare Adequate Environmental Assessment')...." Joint Motion of Plaintiffs and Federal Defendants at 2 (April 22, 1986) ("Joint Motion").

This court granted the Joint Motion, issuing an Order which among other dispositions dismissed counts one and two of the original Complaint as moot. Subsequently plaintiffs filed an application for an award of attorneys' fees and expenses under the Equal Access to Justice Act for work done on those two counts.

### The Equal Access to Justice Act

The Equal Access to Justice Act mandates that fees and other expenses shall be paid to a prevailing party in "proceedings for judicial review of agency action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust...." 28 U.S.C. 2412(d)(1)(A) (1988).

The government claims that the Secretary of the Interior's position both prior to and during litigation of the NEPA issues was "substantially justified."[3] Under the EAJA as currently interpreted, the untenable is not necessarily unreasonable. More precisely, "a position can be justified even though it is not correct." *Pierce v. Underwood,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988). The government's position will be considered sub-

---

**2.** This remains defendants' position even after granting plaintiffs the relief they sought on these counts. Memorandum in Opposition to Plaintiffs' Application for an Award of Attorneys' Fees and Expenses at 6 (July 21, 1986).

**3.** The "position of the United States" means both "the position taken by the United States in the civil action" and "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D) (1988). *Jones v. Lujan,* 887 F.2d 1096, 1097 (D.C.Cir.1989). In this case the justifications for the two are indistinguishable.

454

stantially justified "if a reasonable person could think it correct." *Id.* The Court rejected a less lenient test, "slightly more" than mere reasonableness, *Spencer v. N.L.R.B.*, 712 F.2d 539, 558 (D.C.Cir.1983) *cert. denied* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) as "unadministerable." *Pierce,* 487 U.S. at 568, 108 S.Ct. at 2551. The government must pay fees only if it has "no reasonable basis in law and fact for taking the position it took." *Public Citizen Health Research Group v. Young,* 909 F.2d 546, 552 (D.C.Cir.1990). This determination of what a reasonable person might think correct is a mixed question of law and fact, to be made on the existing record of the agency and the litigation. *Pierce,* 487 U.S. at 559–60, 108 S.Ct. at 2547. This court is satisfied that the government has met its burden in establishing that its position was "substantially justified." ·

NEPA operates under a tier system, which in the context of the Coal Management Program requires additional regional Environmental Impact Statements before individual coal lease sales can take place. Consequently, a reasonable person could believe that promulgating the 1982 changes in the Coal Management program regulations, absent the lease sales they potentially facilitate, does not itself add up to "major federal action." The requirement that an EIS be filed prior to a lease sale suggests that it is the sale, and not the planning for the sale, which is the federal action at issue. The government's argument that the scope of the 1982 changes to the Coal Management Program were not so broad as to cause substantial environmental impacts beyond those anticipated by the 1979 EIS, while less convincing, cannot be considered unjustified. Similarly, as to whether or not information in the 1981 OTA report rises to the level of "significant new ... information" necessary to trigger the CEQ regulations, the assertion that it does not cannot be considered unjustified. And if no new EIS is required, the inadequacies of the EA do not necessarily rise to the level of illegality. Thus it appears to the court that the government's position is· "sub-

stantially justified." Consequently, the application for fees is DENIED.