# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-5176

September Term, 2025

FILED ON: JUNE 15, 2026

SAMARA L. A. SIMMONS,
APPELLANT

v.

UNITED STATES DEPARTMENT OF STATE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02058)

Before: WALKER and CHILDS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*

## J U D G M E N T

The court considered this appeal on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and determined they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

\* \* \*

Appellant Samara L.A. Simmons (Simmons) appeals the district court's denial of her motion for attorney's fees and costs under the Freedom of Information Act (FOIA). Simmons argues that she was eligible for a fee award because her suit caused the United States Department of State (the Department) to release relevant records. Having carefully reviewed the record, we agree with the district court that Simmons did not meet her burden of establishing that "the institution and prosecution of the litigation caused the Department to release the documents obtained." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) (citation modified). Accordingly, we affirm the judgment of the district court denying Simmons's motion for attorney's fees and costs under FOIA.

1

## I.

Simmons has served as a Foreign Service Officer with the Department since 2013. Simmons alleges that she suffered severe workplace mistreatment, such as the suspension of her security clearance and the specter of an insider-threat investigation, at the hands of the Department over the course of her employment. As a result of the alleged treatment, Simmons brought and litigated complaints before a myriad of forums, including the Equal Employment Opportunity Commission, the Department's Office of the Inspector General, and the Foreign Service Grievance Board. Many issues arising from Simmons's allegations remain unsettled in federal courts. *See Simmons v. Blinken*, No. 23-cv-2437, 2024 WL 5697419 (D.D.C. Oct. 10, 2024); *Simmons v. Rubio*, 170 F.4th 905 (D.C. Cir. 2026). This case concerns only one aspect of Simmons's broader litigation effort.

Between 2016 and 2020, Simmons submitted numerous document requests to the Department under the Privacy Act and FOIA (collectively, FOIA requests). *See, e.g.*, 2d Am. Compl. ¶¶ 5–18. These FOIA requests were "interwoven, duplicative, and overlapping." *Simmons v. U.S. Dep't of State*, No. 19-cv-2058, 2025 WL 870322, at *1 (D.D.C. Mar. 20, 2025).

In requests made in 2016, Simmons sought documents from the Office of Medical Services (MED), the Bureau of Human Resources (HR), and the U.S. Consulate Ciudad Juarez (CDJ). Although these 2016 requests went to different components of the Department, they were each similar in nature. The initial request, dated August 17, 2016, sought "any and all records relating to [Simmons]" in the possession of MED, including such records by, to, or from twenty-one named individuals as well as the East Orange General Hospital in Newark, New Jersey. 2d Am. Compl. ¶ 5. Simmons made another request on August 31, 2016, seeking the same records but from HR and regarding even more named individuals. *Id.* ¶ 8. And on September 9, 2016, Simmons again repeated the same request for records concerning herself, but this time from CDJ, with three additional named individuals. *Id.* ¶ 11.

While the Department was able to provide Simmons with her personal medical records by October 2016, it also informed her that the other requested records would need to go through the standard FOIA procedure, as they possibly implicated "information about other individuals." *Simmons*, 2025 WL 870322, at *2. In 2018, from August to December, the Department produced information on six different occasions with reference to a request submitted on August 22, 2016— a request that, although "not included in this litigation," did "track[] the form and substance of the [other] 2016 Requests." *Id.* (citing Weetman Decl. ¶¶ 5–18). Of note, in an October 24, 2018 joint status report, the parties informed the district court that the Department had "expedited the review and production of over 1,000 pages." JSR (A305). This series of productions occurred in relation to ongoing EEO settlement negotiations at the time.

Thereafter, on March 8, 2019, Simmons and the Department reached a settlement under which the Department would "pay Simmons $29,000, destroy all physical and electronic copies of Simmons's East Orange records currently in its possession, and expunge from any copies of Simmons's DS Security File five categories of information." *Simmons*, 2025 WL 870322, at *2

2

(citation modified). "To obtain proof of whether the Government had held up its end of the bargain," Simmons subsequently filed a "flurry" of FOIA requests, *id.* at *3 (citation modified), including a May 21, 2019 request with the Bureau of Diplomatic Security (DS) and a June 24, 2019 request with the Office of Inspector General (OIG). 2d Am. Compl. ¶¶ 13, 16. The Department began producing and releasing documents responsive to the OIG request as early as July 9, 2019. Corresp. (A287).

Having concluded that the Department was not timely in handling her August and September 2016 FOIA requests to HR and CDJ, Simmons filed a complaint on July 11, 2019, and subsequently twice amended her pleading to allege additional inadequate handling of her August 17, 2016 MED request as well as the two 2019 requests. In its answer, the Department admitted that, as of December 3, 2019, it "had not issued a final response to [Simmons's] FOIA requests" but had "responded in part." Answer ¶ 19. Over the next four years, the parties worked together to produce documents under the distant supervision of the district court. Despite impediments arising from the COVID-19 pandemic, by May 23, 2023, the parties jointly represented to the district court that there were "no remaining issues with respect to [the Department]'s production" and "[t]he only issue remaining in dispute [was Simmons's] request for attorneys' fees." JSR (A89).

As forecasted by the parties, on August 31, 2023, Simmons filed a motion seeking $131,001.45 in attorney's fees and $422.65 in costs pursuant to 5 U.S.C. § 552(a)(4)(E)(i). The district court denied Simmons's motion concluding that she was "ineligible for attorneys' fees" because the litigation did not cause a change in the Department's position, *Simmons*, 2025 WL 870322, at *5, and Simmons appealed. We have jurisdiction under 28 U.S.C. § 1291.

**II.**

A plaintiff who seeks attorney's fees under FOIA must show both her eligibility for fees and her entitlement to them. *E.g.*, *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). As relevant here, a plaintiff is eligible for fees if she "substantially prevailed," meaning that she "obtained relief through . . . a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E). This principle is called the "catalyst theory" and looks to "whether a plaintiff's suit substantially caused the production of documents," and is a factual "question of causation . . . reviewed only for clear error." *Grand Canyon Tr.*, 947 F.3d at 95–96 (citation modified). However, as the court reiterated in *Grand Canyon Trust*, causation requires more than just a demonstration that the plaintiff filed a complaint, and the agency subsequently released documents. *Id.* at 97 (citing *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984) (observing that "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation"); *Cox v. U.S. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979) (explaining that the plaintiff "must show that prosecution of the action could reasonably be regarded as necessary to obtain the information, . . . and that a causal nexus exists between that action and the agency's surrender of the information" (citations omitted))). The plaintiff bears "the burden of showing 'that it is more probable than not that the government would not have performed the desired act[, *i.e.*, produced the requested documents,] absent the lawsuit.'" *Id.*

3

(quoting *Pub. Citizen Health Res. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).

In the event the plaintiff establishes that she is eligible for fees, then the district court decides if she is entitled to fees based on a four-factor test assessing: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Kwoka v. IRS*, 989 F.3d 1058, 1063 (D.C. Cir. 2021) (quoting *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016)). However, if the plaintiff is unable to establish her eligibility for fees under the catalyst theory, the court does not have to consider whether she is entitled to fees. *See Grand Canyon Tr.*, 947 F.3d at 95–98.

## III.

### A.

We consider whether the district court clearly erred on the issue of causation. "Clear error occurs if a finding is based on a 'serious mistake as to the effect of evidence or is clearly contrary to the weight of the evidence.'" *BCP Trading & Invs., LLC v. Comm'r of Internal Revenue*, 991 F.3d 1253, 1263 (D.C. Cir. 2021) (quoting *Daniels v. Hadley Mem'l Hosp.*, 566 F.2d 749, 757 (D.C. Cir. 1977)).

Whereas the district court found that she was unable to show that litigation changed the Department's position, Simmons firmly contends that her lawsuit was the direct cause of the Department's document production. She substantiates her contention by highlighting that her 2016 requests went three years without action, only for the Department to suddenly accelerate processing and begin producing documents within weeks of her filing the complaint. In this regard, Simmons asserts that the district court applied a very narrow view of the legal standard, causing it to ignore other well-established indicia of causation, such as an agency voluntarily changing its initial litigating position (from claiming she was not entitled to relief to producing documents) and producing available documents due to Simmons's persistence.

In assessing whether Simmons met her burden under the catalyst theory, "it is appropriate for the district court to consider . . . whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed." *Cox*, 601 F.2d at 6. As the district court explained, the Department "promptly acknowledged [Simmons's] FOIA requests, immediately started producing records, and made several pre-litigation productions." *Simmons*, 2025 WL 870322, at *4 (citing Weetman Decl. ¶¶ 10–17). The district court further noted that in 2018, the Department had expedited its review and produced "more than 1,000 pages of responsive records in connection with the EEO settlement negotiations." *Id.* And while the Department "did produce further documents" after Simmons initiated the lawsuit, it had "provided a production schedule in November 2019," before Simmons amended her complaint to include the 2019 DS and OIG requests. *Id.* Of relevance here, the Department started producing documents responsive to the 2019 OIG request on July 9, 2019, months before Simmons amended her complaint to include allegations related to that request. *See*

4

Corresp. (A287); 2d Am. Compl. ¶¶ 16–17; *see also Simmons*, 2025 WL 870322, at \*4 ("Within three weeks of Plaintiff submitting the June 24, 2019 request, State OIG searched for, located, and released responsive records").

In *Grand Canyon Trust*, this court affirmed the district court's decision denying the plaintiff's eligibility for fees because the record lacked any indication that the government would not comply with plaintiff's FOIA requests. *See Grand Canyon Tr.*, 947 F.3d at 97. As in that case, the record supports the district court's conclusion that Simmons was ineligible for an award of fees under FOIA because the Department's document releases were "the result of a diligent, ongoing process that began before the initiation of the lawsuit." *Simmons*, 2025 WL 870322, at \*4. Therefore, we do not find that the district court's decision as to causation was illogical, implausible, or a mistake.

**B.**

Simmons also contends that the district court clearly erred in several other respects. First, according to Simmons, the district court failed to make specific findings or provide any substantive analysis regarding either her 2016 CDJ FOIA request or her 2019 DS FOIA request. Next, Simmons argues that the district court's generalized findings are unsupported by a record that clearly depicts the Department's inaction prior to Simmons filing her initial complaint. And finally, Simmons argues that the Department's use of Susan Weetman's declaration to defend against the motion should have been ineffectual because the declaration was directly contradicted by the agency's own judicial admissions and the parties' status reports.

Simmons argues that we should reverse the district court's decision on fees and remand based on an "absence of findings as to the 2016 CDJ and 2019 DS requests." Reply Br. 5. In our FOIA attorney's fee precedent, we are deferential in acknowledging that district courts are "better suited to make the initial determination" about fees because they "closely monitored the litigation." *Morley v. CIA*, 894 F.3d 389, 391 (D.C. Cir. 2018). The district court in this matter confronted an extensive record of cumulative and duplicative FOIA requests, where a single record could be responsive to separate requests sent to different sub-agencies within the Department. In crediting the Department's responsive efforts, the district court, through its diligent scrutinization of the record, explained that documents Simmons received in response to her 2016 HR request, such as documents from the EEO settlement, were similarly responsive to the 2019 DS Request. As the district court further observed, there was also a clear overlap between those documents responsive to the 2016 CDJ FOIA request and those the Department provided in response to the 2016 HR request, with the only difference being the specific component within the Department from which Simmons requested the records. Based on our review of the record, the district court's analysis of both the 2016 CDJ FOIA request and the 2019 DS FOIA request did not constitute clear error.

We next reject as unsupported by the record Simmons's contention that the district court erroneously relied on generalized findings to deny her motion. To support its decision, the district court cited to facts in the declaration of Susan Weetman, the Department's Deputy Director of the Office of Information Programs and Services, and other corroborating evidence. Based on the

totality of information contained in the record, the district court concluded that prior to Simmons initiating her lawsuit the Department acknowledged receipt of Simmons's FOIA requests, processed those requests, and made document releases, and attributed any production delays to the substantial backlog experienced by the agency or the processing shutdown caused by the COVID-19 pandemic. Contrary to Simmons's assertion that the district court relied on generalizations, it in fact cited specific facts in the record supporting its conclusion as to why litigation did not "cause a change in the Department's position." *Simmons*, 2025 WL 870322, at *5 (citation modified).

Lastly, Simmons questions whether it was an error for the district court to rely on the facts contained in Susan Weetman's declaration. She argues that the parties' joint status reports and the Department's judicial admissions contradict the Weetman declaration.

We afford an agency declaration a presumption of good faith and take its contents as true if it is "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Susan Weetman's declaration plainly meets this standard. She was the most reliable source of information regarding the Department's efforts to respond to Simmons's FOIA requests. As the Department's Deputy Director of the Office of Information Programs and Services, she was the "official immediately responsible for responding to" FOIA requests. Weetman Decl. ¶ 1. Moreover, in her position, she was "familiar with the efforts of Department personnel to process the FOIA requests . . . and [was] in charge of coordinating the agency's search and processing efforts with respect to those requests." *Id.* ¶ 3.

To counter the impact of Weetman's declaration, Simmons had to "point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer Watch*, 692 F.2d at 771. We considered Simmons's evidentiary references and find them inadequate to support a finding of bad faith by the Department.[1] Accordingly, it was not clearly an error for the district court to substantiate its findings with Weetman's declaration.

*       *       *

For the foregoing reasons, we conclude that the district court did not clearly err in finding that Simmons did not substantially prevail in this litigation. Having considered and rejected Simmons's arguments,[2] we affirm the judgment of the district court denying Appellant Samara L.A. Simmons's motion for attorney's fees and costs.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely

---

[1] We note that in its response brief, the Department argues that Simmons waived any argument that the agency made false representations or acted in bad faith. *See* Appellee's Br. 35. In her initial brief, Simmons pointed out what she argued to be several instances of false representations in response to her FOIA requests. *See* Appellant's Br. 46, 55, 60. On this record, we cannot find that Simmons waived her arguments on this issue. *Contra United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("Ordinarily, arguments that parties do not make on appeal are deemed to have been waived.").

[2] All arguments not expressly addressed have nevertheless been considered and rejected.

petition for rehearing or petition for rehearing *en banc*.  *See* Fed. R. App. P. 41(b); D.C. Cir. Rule 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
      Daniel J. Reidy
      Deputy Clerk